# DECISIONS

## OF THE

# Court of Appeals of Kentucky

### SPRING TERM, 1916.

## Eakin's Administrator v. Anderson.

(Decided March 7, 1916.)

### Appeal from Fayette Circuit Court.

1. **Master and Servant—Servant Acting Outside Scope of His Authority—Chauffeurs.**—A chauffeur, having taken the owner's automobile out of the garage for his own purposes at a time and to a place out of all proportion to what was reasonably necessary for a particular required service for the owner, but which he intended ultimately to perform, held, under the circumstances disclosed by the evidence in this case, to have been engaged in his own private affair when an accident occurred, and not in the owner's service so as to render the owner liable for the chauffeur's negligence.

2. **Master and Servant—Distinguishing Authority.**—This case distinguished from cases involving a "deviation" from, or an "abandonment" of the service of the master by a servant.

GORDON & LAURENT, PITTS & McCONNICO and J. A. EDGE for appellant.

HUNT & HUNT, KIMBALL & HUNTER and HUNT & BUSH for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an action by the administrator of Frederick Eakin against R. T. Anderson and Allen Hicks to recover damages for the death of said Eakin, who, while riding a bicycle, was killed at the corner of Third and Walnut Streets in the city of Lexington by being run over by an

vol 169—1

automobile owned by said Anderson while being operated by said Hicks.

At the conclusion of plaintiff's evidence a peremptory instruction was given directing the jury to find for the defendant, Anderson, and this appeal is prosecuted to reverse the judgment dismissing the petition against Anderson, the peremptory having been refused and the case continued as to Hicks.

The facts are these: Hicks was Anderson's chauffeur, and upon the day of the accident had been relieved from duty for the day early in the afternoon, and after being released had made an engagement to call that evening upon a young lady who lived at 155 Walton Avenue in said city. About six o'clock that evening, and after Hicks had made the engagement to call upon the young lady, Mr. Anderson's wife called him over the phone and gave him instructions, her right to do which is conceded, to take Anderson's automobile and go to Second and Broadway at about five minutes to nine to get her brother, Baldwin Respass, and convey him and his guests to and from a reception at the Phoenix Hotel. At eight o'clock that evening Hicks went to the garage on Main Street where the automobile was kept, got the automobile and went to 155 Walton Avenue to inform his young lady friend that he would have to work that night and would be unable to keep his engagement with her.

To reach her home he traveled East on Main Street and North on Walton Avenue, a distance of 7,385 feet. After remaining twenty or thirty minutes at the home of this young lady, Hicks started, by a different route from the one over which he came, to the home of Baldwin Respass who resided at Second and Broadway, traveling north on Walton Avenue and west on Third Street to its intersection with Walnut Street, a distance of 5,564 feet, when the accident resulting in the death of Eakin occurred.

The distance from Third and Walnut where the accident occurred to Second and Broadway, Respass' home, is 2,363 feet, while the distance between the garage and Second and Broadway is 997 feet. The distance traveled by Hicks from the time he left the garage to the place of the accident is 12,949 feet, and the home of Respass is almost directly between the place of the accident and the garage. The accident occurred somewhere between twenty and ten minutes before nine o'clock.

The question involved upon this appeal is whether Hicks at the time of the accident was the servant of Anderson prosecuting his business, or whether at the time he was acting outside of his employment, and engaged in an affair of his own.

Appellant contends that as Hicks at the time of the accident was on his way to the home of Baldwin Respass for the purpose of performing the service required of him by his master, the relation of master and servant existed, and that the doctrine of *respondeat superior* is applicable.

Appellee contends that since Hicks had taken the automobile for his own purpose, and without consent of appellee, and that at the time of the accident was far beyond any reasonable route from the garage to the home of Respass, that the relationship of master and servant did not then exist, and he is not liable for Hicks' acts.

In support of appellant's contention we are cited to Jones v. Wiegand, 119 N. Y. Sup., 441, and Geraty v. National Ice Co., 44 N. Y. Sup., 659, which cases are stated by counsel to be perhaps the leading cases in this country supporting their contention.

In the Jones case, *supra,* the defendant's driver was sent with defendant's coach to an undertaker for use at a funeral. According to directions he called for some gentleman, took him to the house of mourning, to the cemetery and then back home. Instead of returning the coach to defendant's stable in King's county, a distance of sixteen blocks by the direct route, the driver took a circuitous route, driving back into Queen's county and going several blocks out of his way, and part of the time in an opposite direction from the stable. He left the coach temporarily for an errand of his own, and upon returning started up the horses, taking no heed of a little child who was playing near the step of the coach, with the result that the child was drawn under the wheels and run over.

Commenting upon this state of facts, the court said:

"The master is liable for acts done by the servant in the course of his employment as such; but mere disregard of instructions or deviation from the line of his duty does not relieve the master of responsibility. Wrongful acts are usually in violation of orders, or in deviation from the strict line of duty. The test is

whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. If the servant, for purposes of his own, departs from the line of his duty, so that for the time being his acts constitute an abandonment of his service, the master is not liable; but, to constitute an abandonment of the service, the servant must be serving his own or some other person's purposes, wholly independent of his master's business. It seems to me that the making of the circuitous route to the stable was at most a deviation, not an abandonment, of the service. While the servant deviated from the direct route, he was nevertheless engaged in taking the coach back to the stable. He combined his own with his master's purposes, but did not wholly abandon his service, except during the time when he was absent from the coach to make his call.

"But, if the foregoing be doubtful, it seems plain that, when the driver returned to the coach for the purpose of taking it back to defendant's stable, he re-entered upon his master's service, and resumed the business which he had temporarily abandoned. It is no answer to this to say that the accident would not have happened if he had not made the call. His carelessness after he had resumed his master's business was the *causa causans* of the accident. The leading English cases (Joel v. Morrison, 6 Carr. & P., 501, and Skeath v. Wilson, 9 Carr. & P., 607), are the illustrations of mere deviation from the line of duty, while Mitchell v. Crassweller, 13 C. B., 237, and Storey v. Ashton L. R. & Q. B., 476, were held to be cases of a total abandonment of the service. The cases cited by the respondent are not in point, and it is necessary to note only one or two of them. In Cunningham v. Castle, 127 App. Div., 580, 11 N. Y. Supp., 1057, the defendant's evidence tended to show that the defendant had loaned the automobile to his chauffeur, and that the accident happened while the latter was using it solely for his own purposes. Sheridan v. Crassweller, *supra*. The evidence in that case tended to show, not deviation merely, but an entire abandonment or departure from the master's business. The coachman was not returning the horse and carriage to the stable, even by a circuitous route, but was using them for purposes of his own. The Massachusetts cases may seem to support the defendant's contention. See McCarty v. Tim-

mons, 178 Mass., 378, 59 N. E., 1038, 86 Am. St. Rep., 490; Perlstein v. American Express Co., 117 Mass., 530, 59 N. E., 194, 52 L. R. A., 959.

"This case, however, may be distinguished from those by the fact that, when the accident occurred, the servant had performed his own purpose and had resumed his duty to return the coach to the stable. I do not see how the case can be distinguished from Williams v. Koehler & Co., 41 App. Div., 426, 58 N. Y. Supp., 663, a case in this department, decided on the authority of Quinn v. Power, 87 N. Y., 535, 41 Am. Rep., 392, except that that was a much stronger case for the defendant than this."

From the above it will be seen that where the existence of the relationship of master and servant existed, a departure of a few blocks from a direct route of sixteen blocks for the servant's own purpose, was held to be a mere deviation, or at the most a temporary abandonment of the service, and that, if an abandonment, the service was resumed the moment the driver had performed his own service, and that at the time of the accident he had resumed the service of the master.

In Geraty v. National Ice Co. case, the drivers of the company's ice wagon were sent with a load of ice to be delivered at the Grand Central Station in New York City. They did not take the direct route, but deviated considerably from it, stopping at 43rd street and Third avenue for their own purposes. When they came back to the wagon a cake of ice slipped off and struck plaintiff. The court in that case said:

"It is the rule, no doubt, that the master is not necessarily relieved from responsibility for an injury resulting from the negligence of his servant simply because the servant is at the time acting in disobedience to the master's order. The question in every case is whether the act he was doing was one in prosecution of his master's business. If the act was one which continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever negligence might take place during its performance, although the servant in doing it was not obeying the instructions of the master, or, although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention, at the same

time of pursuing his master's business. Quinn v. Power, 87 N. Y., 535, 539. The rule, as laid down by the latest cases in the English court, is that a master is responsible for an injury resulting from the negligence of his servant while driving his cart, provided the servant is at the time engaged in his master's business, even though the accident happens in a place to which his master's business did not call him. But if the journey upon which the servant starts be wholly for his own purposes, and without the knowledge or consent of the master, the latter will not be liable. Mitchell v. Grassweller, 13 C. B., 237; Storey v. Ashton, L. R., 4 Q. B., 476. This is also the rule laid down in this State. Cosgrove v. Ogden, 49 N. Y., 255. In that case it is said that the test of the master's responsibility for the act of his own servant is whether the act was done while the servant was engaged in the prosecution of the business which he was employed to do. In this case the act that the servant was employed to do was to take this ice from the warehouse to the Grand Central Station. The route taken was not the direct route, but that fact of itself does not relieve the master from his liability. Within the cases above stated, the liability still continues, unless the deviation is made, not in the prosecution of the master's business, but for some different and other purpose. The distinction is well illustrated in the cases of Cavanaugh v. Dinsmore, 12 Hun., 465, and Sheridan v. Charlick, 4 Daly, 338, in which the servant, having been directed to use his master's horse and carriage for a particular purpose, and then to put it up in the stable, instead of doing so, after the master's business had been performed, went off in another direction in the prosecution of his own affairs, and for his own purposes, the defendant was not responsible for it. In this particular case, so long as Sweeney and McQuade were engaged in taking this ice to the Grand Central Station they were engaged in the prosecution of the master's business, and it was liable for their acts. The liability ceased, if at all, only when they were not engaged in taking the ice to the place where they were directed to take it.

"According to the evidence of defendant's witness, they stopped near the corner of Forty-third street and Third avenue for the purpose of unloading some of this ice. Up to that time they had been proceeding with the

business in which they were engaged. While they stood there, unloading the ice, if they did so, they were undoubtedly not engaged in the master's business, and were acting in their own behalf, and at that time it is quite clear that the master was not liable for the unloading in which they were engaged. The jury were so instructed by the court. They were told that if the accident happened while these men were unloading the ice the defendant was not responsible.

"We think that the defendant was not entitled to be relieved from liability if the accident happened after Sweeney had taken his place upon the wagon; and resumed his course toward the Grand Central Station and the accident was caused by the slipping of the ice from the wagon. At that time Sweeney, whatever may have been his object in deviating from the direct route, was again proceeding to deliver ice. He had accomplished whatever purpose he intended to accomplish by the deviation, and had resumed the execution of the work which the defendant had entrusted him to do."

From which it will be seen that in that case the servants after having begun a service for the master, deviated a short distance from a direct route for their own purposes, and after the completion of their own purposes, had resumed the service upon which they were engaged:

In both of these cases it will have been noticed that the deviation or abandonment was from a service for the master, to do which the servants had started out, and that in the first case the deviation was one of a few blocks from a journey of sixteen blocks, and in the latter case it was a short distance from what was probably a trip of long distance compared with the deviation. Both of these cases are distinguished from the case at bar by the fact that the deviations were short in comparison with the whole trip, and by the fact that the trip was begun and ended in the master's service; while in the case at bar, the trip on the servant's business was eight times the distance of the trip he was directed to take for the master, and at the time of the accident he was still more than three times the distance he was directed to go, away from and beyond the place to which he was directed to go; and of still greater importance, he did not start out in the service of the master, but to serve his own purposes.

It may be, and probably is, true, as stated in the Geraty v. National Ice Co. case, where a deviation from, or temporary abandonment of the service is involved, that as soon as the servant has completed his private business and starts again an act "which continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever negligence might take place during its performance, although the servant in doing it was not obeying the instructions of the master, or, although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention, at the same time of pursuing his master's business."

But that rule was not contemplated, and does not apply in our judgment where the trip was undertaken not in the master's service, but without the knowledge or consent of the master, and for the servant's own purposes, and that the court in the Geraty v. National Ice Co. case was of the same opinion is apparent from the following statement made almost immediately following the one last quoted above: "But if the journey upon which the servant starts be wholly for his own purposes, and without the knowledge or consent of the master, the latter will not be liable."

Appellant also cites a number of other cases in which a deviation or an abandonment was involved, in which practically the same principles are announced as in the two cases from which we have quoted above, but we do not consider it necessary to discuss them here, because we agree with the rules therein announced when applied to a case where a deviation from or an abandonment of the service is involved.

We do not deem the case at bar such a case, or as involving a "deviation" or an "abandonment." Without doubt the evidence conclusively shows, with nothing to the contrary, that when Hicks went to the garage and took appellee's automobile upon the evening of the accident involved here, he did so without the consent of the master for his own private business, and that he did not then enter the service of appellee; so that, the question before us is not one analogous to, or covered by the cases cited for appellant.

The question before us is whether or not at the time of the accident the servant had entered his master's

service, after having been upon a trip of his own with the master's car without his consent. That this was the question involved was argued by counsel for appellee, who were challenged by counsel for appellant to state when, if that were true, the servant may be said to have entered the service of the master, and we presume that it will be expected of us to answer that question; but we are unwilling to attempt to state at just what point the servant under such circumstances may be said to enter the master's service, because in the first place it would be difficult, if not impossible, for us to state such a rule as would be correct under circumstances not now in contemplation; and, in the second place, because it is unnecessary to the decision of this case.

However, we are convinced that upon this evening Hicks had not entered, and was not engaged in the service of appellee at the time of the accident. He had been directed to drive the car from a definite place to a definite place, a distance of less than a thousand feet, at about five minutes before nine o'clock. He took the car nearly an hour before that time, when but a few minutes would have been necessary in which to make the trip, and his reason for taking it at the time he did was to make an entirely different trip, and for his own purposes. At the time of the accident he was upon the return portion of his own private journey, incidentally, of course, for the purpose of entering his master's service. As we have stated before, it would be difficult, and we are unwilling to attempt to say just when he would have entered the master's service, but at the time of the accident he was not in the vicinity, nor within the "penumbra," as it has been called in one of the cases, of any reasonable route that could have been employed by him in performance to his master's business. He was then more than twice as far from and beyond the place to which he had been directed to go than if he had never started at all, and we hold that at the time and place of the accident he was engaged in one portion of his own trip. The fact that at that time he had in mind a service to be performed for the master, and was proceeding in a direction that ultimately would have accomplished the master's desires, was merely incidental in this case, and the return from his own private trip so that he might go to work for the master was the matter in which he was then engaged.

Statements of distances to or from a place, or before or after a time are relative statements, in the consideration of which in any case a due sense of proportions must be maintained. A side trip of several blocks from a main trip of sixteen blocks may correctly be called a slight deviation, whereas a side trip of several blocks from a main trip of less than one block might reasonably be regarded as an entirely different proposition; and the taking of an automobile an hour before the necessary time for a required journey of a few blocks is an entirely different proposition from what it would be to take it out of the garage an hour before the necessary time for a journey of many miles; and, while Hicks in this case took the automobile out a little less than an hour before the time reasonably necessary to have taken it, and while at the time of the accident he was not a great many squares away from the place to which he had been directed to take it; nevertheless, in view of the short distance he was required to go in the master's service, we are convinced that his service neither warranted his taking the machine at the time he did, nor having it near the place of the accident.

We think our position as stated is warranted upon reason and supported by the principles announced in the following cases: Tyler v. Stephan's Admx., 163 Ky., 770; Fleischner v. Durgin, 207 Mass., 435, 33 L. R. A. (N. S.), 79; Hayes v. Wilkins, 194 Mass., 223, 80 N. E., 499; Danforth v. Fisher, 21 L. R. A. (N. S.), 93, 75 N. H., 111, 71 Atl., 535; Patterson v. Kates, 152 Fed., 481; McCarty v. Timmins, 178 Mass., 378, 59 N. E., 1038, 86 Am. St. Rep., 490; Symington v. Sipes, 47 L. R. A. (N. S.), 662, 88 Atl., 134; and that our conclusion upon the facts here is not out of harmony with the Jones v. Wiegand or the Geraty v. National Ice Co. cases, or any case cited by appellant.

Having reached the conclusion that Hicks at the time and place of the accident was not engaged in the service of appellee, Anderson, it is unnecessary to discuss the question of Hicks' negligence as the cause of the accident, and it results that it was not error for the trial court to have instructed the jury to return a verdict for appellee.

Wherefore the judgment is affirmed.