HILL v. STAATS. (No. 8416.)

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1916.)

1. APPEAL AND ERROR ☞263(1)—REVIEW—SCOPE—QUESTIONS CONSIDERED.

Although the Court of Appeals considers exceptions to rulings on requested instructions necessary, yet an assignment of error without such exception will be considered where the Supreme Court's action in granting writs of error renders the necessity of an exception doubtful.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1516; Dec. Dig. ☞263(1).]

2. MASTER AND SERVANT ☞302(2)—INJURY TO THIRD PERSON—SCOPE OF EMPLOYMENT.

Where defendant's chauffeur, after leaving defendant's wife and children at a circus, drove away in disobedience of specific instructions, and ran down plaintiff, held, that defendant was not liable, since the chauffeur was acting outside the scope of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1218, 1219; Dec. Dig. ☞302(2).]

3. EVIDENCE ☞589—WEIGHT—INTERESTED PARTIES.

Although the entire testimony as to the instructions given the chauffeur came from defendant and his wife, yet their uncontradicted testimony cannot be disregarded where no discrediting circumstances appear.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. ☞589.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by S. D. Hill against C. G. Staats. Judgment for defendant, and plaintiff appeals. Affirmed.

J. W. Stitt, of Ft. Worth, for appellant. Capps, Cantey, Hanger & Short, of Ft. Worth, for appellee.

BUCK, J. Appellant sued appellee to recover damages for personal injuries alleged to have been caused by defendant's automobile, driven by the latter's servant, running into a wagon in which plaintiff was riding on East Front street in the city of Ft. Worth. He alleged that the automobile of defendant was being driven recklessly and at an unlawful rate of speed, to wit, 30 miles an hour, and that the same was being driven under defendant's authority and direction. He alleged damages for injury to wagon and horse, as well as for personal injuries.

Defendant, among other defensive pleadings, denied that at the time of the accident the driver of the automobile was acting under his authority, but alleged that on said day the defendant, before he left home, had instructed the driver, or chauffeur, to drive defendant's wife and children to the circus grounds, located in the eastern part of the city, near East Front street; that he instructed the chauffeur not to leave the place where Mrs. Staats and children would alight from the automobile to enter the circus until Mrs. Staats was ready to return home, and not to move the car from said position during the interval, and that said driver was specif-ically and emphatically told not to use said automobile for his own pleasure or purposes in any way or manner whatsoever; that, in addition to what the defendant, himself, had said to the driver, when Mrs. Staats left the car on East Front street near the circus grounds, she instructed the chauffeur not to move the automobile while she was gone, but to leave it in the exact place where they alighted; that when she returned to the car she found it in practically the same place where she left it. Defendant pleaded therefore that, if the injuries to plaintiff were caused through the acts of negligence of the defendant's driver, such driver was not engaged in any work or labor for the defendant, and was not performing any manner of employment for him, but, on the contrary, was acting contrary to the express instructions and directions of the defendant, and hence defendant would not be liable for any injuries inflicted by the driver while so acting or engaged.

Upon a trial before a jury plaintiff introduced evidence amply sustaining the theory of negligent and reckless driving on the part of defendant's chauffeur while driving defendant's car, and also upon the question of substantial injuries having been inflicted upon plaintiff by reason of the accident. Defendant and his wife testified to the instructions given to the chauffeur not to leave the vicinity of the circus grounds during the time that Mrs. Staats and the children were in attendance upon the circus, in effect and substance sustaining the defensive allegations pleaded upon this issue. Upon this issue the evidence was uncontradicted. In fact, the testimony introduced by the plaintiff as to the driver's recklessness and negligence was likewise uncontroverted. The evidence showed that, at the time of the accident, the automobile was coming from the direction of the business section of the city and going in the general direction of the circus grounds; the collision occurring between 3 and 4 o'clock in the afternoon, and at a place several blocks from the show grounds. The circus opened about 2 o'clock p. m., and closed about 5 o'clock p. m. Hence it is evident that the accident occurred while defendant's family were attending the circus. The driver did not testify, and no positive evidence was introduced to show where he had been during his absence from the place where he was told to wait, nor the reason for his leaving said place. One witness stated that at the time of the accident the chauffeur was racing with another negro driver.

Both plaintiff and defendant moved for a peremptory instruction, the former requesting that only the question of the amount of damages be submitted as issuable. The court instructed a verdict for defendant and overruled plaintiff's motion for a peremptory instruction.

In the statement of facts it is shown that the following proceedings occurred:

"The Court: Defendant's motion for peremptory instruction is granted. I will give the plaintiff an exception.

"Mr. Stitt (counsel for plaintiff): We will file a motion for new trial. I do not care for a notation of an exception at this time. Just enter the verdict and we will file a motion."

Plaintiff did file a motion for new trial, which was by the court overruled, and plaintiff appealed to this court; the case being given the docket number 8325.

Subsequent to the lodgment of the transcript in this court, appellee filed a motion in the trial court to strike out bill of exception No. 3, shown in the transcript of cause No. 8325, and which recited that an exception to the action of the court in overruling plaintiff's motion for peremptory instruction and in granting defendant's motion for instruction was reserved. Defendant alleged as grounds for his motion that in fact plaintiff at the time the ruling was made, reserved no exception to the action of the court in this regard, and that the recitation in the bill of exception that an exception was taken was incorrect. Plaintiff replied that bill of exception No. 3, as shown in the transcript in cause No. 8325, correctly recited the facts, and that same had been properly allowed by the court with defendant's approval, and had been duly approved by the court. Defendant, in answer, stated that, if in fact said bill of exception had been agreed to by counsel for defendant, the same was done under a mutual misapprehension of fact as to the reservation of an exception by plaintiff. The court, having heard the evidence upon this issue, granted defendant's motion to strike, from which order and ruling the plaintiff appealed, and, upon the transcript having been filed in this court, the case was given the docket number of 8416. Upon motion by plaintiff the two cases were consolidated by this court and given the docket number of 8416.

[1] We have concluded that we are not called upon to determine the correctness vel non of the court's action in sustaining defendant's motion to strike out the bill of exception mentioned. In the late case, not yet published, No. 8387, entitled Glens Falls Insurance Co. v. Herbert G. Walker, 187 S. W. 1036, this court, speaking through Chief Justice Conner, said:

"For various reasons, to be hereinafter more particularly noticed, appellant here insists that the court should have given a peremptory instruction to find for defendant as requested, and an exception was taken to the action of the court in refusing to give this instruction; but the reason or reasons upon which the requested instruction was based were not set forth in the bill of exception, nor were reasons assigned in appellant's motion for a new trial, and appellee therefore objects to our consideration of the assignment on these grounds. This court, and most, if not all, of the other Courts of Civil Appeals, have held, in accordance with the provisions of the act approved March 29, 1913 (see General Laws 1913, p. 113), that to be available on appeal it must appear that spe-cific exception was made to the action of the court in refusing a special instruction. See Mutual Life Ins. Ass'n v. Rhoderick, 164 S. W. 1067; Heath v. Huffhines, 168 S. W. 974; St. L. & S. W. Ry. Co. v. Wadsack, 166 S. W. 42; T. & P. Ry. Co. v. Tomlinson, 169 S. W. 217; Cleburne Street Ry. Co. v. Barnes, 168 S. W. 991; Elser v. Putnam Land & Development Co., 171 S. W. 1052; Bohn v. Burton-Lingo Co., 175 S. W. 173; King v. Gray, 175 S. W. 763. Not only so, but this court has further held that the spirit of the enactment referred to, and of our laws relating to bills of exception, require that the excepting party should set forth in his bill of exception the specific reasons therefor, to the end that the trial court may be properly informed and have presented an opportunity to correct the error, if one was thus made to appear. See G., C. & S. F. Ry. Co. v. Loyd, 175 S. W. 721. We yet entertain the views expressed in the decisions cited, and under ordinary circumstances would feel no hesitation in sustaining appellee's exception to appellant's assignment to the action of the court in refusing to give the peremptory instruction; but since the decisions cited, as we are informed, our Supreme Court has granted a writ or writs of error indicating that the statute in force prior to the act of 1913 above referred to is controlling. This prior statute (Revised Statutes 1911, art. 1974) provides that, when instructions are requested, the judge shall note distinctly which of them he gives and which he refuses and shall subscribe his name thereto, and that such instructions 'shall be filed with the clerk and shall constitute a part of the record of the cause, subject to revision for error, without the necessity of taking any bill of exception thereto.' Of course, as appellant now contends, if this article of the statute controls and if it be unnecessary to take an exception to the action of the court in refusing an instruction, it necessarily follows that appellee's objection to the assignment under consideration must fall. We have therefore concluded, in view of the uncertainty thus indicated, to consider appellant's first assignment of error."

In line with the policy thus enunciated, we have concluded that defendant's assignment attacking the action of the court in refusing plaintiff's motion for a peremptory instruction and granting defendant's motion to the same effect should be considered, with or without exception being reserved to such action.

[2] Hence, there is presented to us only one question for consideration, to wit, did the uncontroverted testimony establish defendant's contention that at the time of the accident defendant's driver did not bear to defendant such a relation as would make defendant liable for injuries to third persons negligently inflicted by said driver?

In 2 Mechem on Agency (1914 Ed.) § 1858, in discussing the liability of the principal for the agent's torts and crimes, it is said:

"In all of the discussions of this question, it is constantly assumed, and it is always a condition precedent, that the relation of principal and agent, or master and servant, shall actually exist. That this is so seems often to be easily overlooked, and it cannot very well be unduly emphasized. Two quotations from a single court, out of many similar ones, may therefore be justified.

"'A person, either natural or artificial, is not liable for the acts of negligence of another, unless the relation of master and servant or principal and agent exists between them.'

"'There can be no recovery against one

charged with negligence upon the principle of respondeat superior unless it be made to appear that the relation of master and servant in fact existed, whereby the negligent act of the servant was legally imputable to the master.'

"The relation must also exist at the time in question. If it had not yet begun, or if it had already terminated, no liability can ordinarily arise."

In the case of Goodrich v. Musgrave Fence & Auto Co., 154 Iowa, 637, 135 N. W. 58, it was held that where a man was allowed to take an automobile with a view to showing it to a possible purchaser, and, after having done so, without selling it, to keep it several days without further authority, during which time, while using it for his own purposes, he negligently injured the plaintiff, there was neither such a relation of agency or of master and servant as would make the owner liable.

In Robards v. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394, the Kentucky Court of Appeals said:

"The master is liable only for the authorized acts of the servant, and the root of his liability for the servant's acts is his consent, express or implied, thereto. When the master is to be considered as having authorized the wrongful act of the servant, so as to make him liable for his misconduct, is the point of difficulty. Where authority is conferred to act for another without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and, when exercised, becomes, as to third persons, the discretion and act of the master, and this although the servant departed from the private instructions of the master, provided he was engaged at the time in doing his master's business, and was acting within the general scope of his employment. It is not the test of the master's liability for the wrongful act of the servant from which injury to a third person has resulted that he expressly authorized the particular act and conduct which occasioned it. In most cases where the master has been held liable for the negligent or tortious act of the servant, the servant acted, not only without express authority to do the wrong, but in violation of his duty to the master. It is in general sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders."

See, also, Acme Laundry v. Weinstein, 182 S. W. 408; Weber v. Lockman, 66 Neb. 469, 92 N. W. 591, 60 L. R. A. 313.

The question of extreme difficulty in the consideration of the phase of the subject now under discussion is to determine what constitutes the "course of employment" in cases relating to master and servant, or the "scope of the authority," in cases of agency. As is said in 2 Mechem on Agency, § 1879:

187 S.W.—66

"The utmost that can ordinarily be said is that a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct, and logical result of it. If in doing such an act the servant acts negligently, that is negligence within the course of the employment."

In the cases of G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, an engine dispatcher having charge of the engines and machinery in a railway roundhouse, and handling a hose conveying a blast of compressed air, provided to work certain machinery, but which, as an experiment, he was using instead of a water hose to extinguish fire in an engine, turned the air blast, in sport, and without intending injury, upon the person of an engine wiper, his subordinate in the roundhouse, inflicting injuries which caused his death. It was held that in such an act he was not engaged in the employer's service and that the railway company was not liable. In an exhaustive opinion in this case, Associate Justice Williams of our Supreme Court said:

"The fact that Nicholls, while holding the hose, conceived the purpose of using it, and did use it upon the employés, in sport, is undisputed and is wholly inconsistent with any assumption that he was then in any way attempting to serve the defendant. His act was a clear departure, for the time, from that service, and the quickness with which it was done cannot be made the test. If the turning aside from the master's business be only for an instant, so that it be complete, the authorities agree that there is no liability on his part for the servant's act. 1 Thomp. on Neg. 526, and cases there cited. If a miner, or butcher stand with pick or knife raised, to dig or to stab an animal, for the master, and, seeing his enemy before him, turn the tool upon him as a weapon to kill him, would any one argue that the master should be held accountable for the death? Where is the difference if the instrument be used merely to frighten for the amusement of the servant? The only difference between such cases and other personal wrongs committed by persons who happen to be employés of other persons is the fact that in the cases supposed the servants misuse implements intrusted to them by their masters. But that, certainly, is no reason for charging the master, as cases almost numberless will show. I. & G. N. Ry. Co. v. Cooper, 88 Tex. 610 [32 S. W. 517]; Little Miami Ry. v. Wetmore, 19 Ohio St. 110 [2 Am. Rep. 373]; Golden v. Newbrand, 52 Iowa, 59 [2 N. W. 537, 35 Am. Rep. 257]; Howe v. Newmarch, 12 Allen [Mass.] 49."

In the Cooper Case, cited in the opinion just quoted, an engineer and fireman in charge of a freight train permitted Cooper to ride in the cab. They had no authority to do so. In playing a practical joke upon Cooper, they scalded him, inflicting a serious bodily injury, and it was held that the act of the engineer and fireman causing the injury was not in furtherance of the business of the railway company nor in the accomplishment of the object for which they were employed, and that the railway company was not liable.

In I. & G. N. Ry. Co. v. Anderson, 82 Tex.

516, 17 S. W. 1039, 27 Am. St. Rep. 902, the same principle is enunciated by Judge Gaines in the following words:

"To hold the master liable for the acts of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary to his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority conferred upon the servant must in general depend upon the nature of the service he is engaged to perform and the circumstances of the particular case."

In Branch v. I. & G. N. Ry. Co., 92 Tex. 288, 47 S. W. 974, 71 Am. St. Rep. 844, where a railway company had intrusted the care of a hand car to a section foreman, and the plaintiff was injured at a public crossing by a collision with such hand car, through the negligence of the foreman while operating it upon a private errand, and not in the performance of a duty to the company and against its orders, it was held that the railway company was not liable. Also, in the case of I. & G. N. Ry. Co. v. Yarbrough, 39 S. W. 1096, where railroad employés in charge of the locomotive sounded a whistle without any proper occasion therefor, but for the purpose of frightening a horse near the track, and not in the discharge of any duty, it was held that the railway company was not liable for damages caused thereby; such acts not being within the scope of their employment.

In the case of Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790, under a state of facts very similar to that disclosed in the instant case, the Kentucky court of last resort, in holding that the master was not liable for an accident occurring while the driver of the automobile was returning from a trip or journey taken, not in the furtherance of his employer's business, but for his own pleasure, said:

"It was still his own journey, undertaken exclusively for his own purposes, and for the accommodation of Gudgel. He was not, therefore, engaged in the master's work at the time the accident occurred. It follows that the trial court should have directed a verdict in favor of the defendant."

See, also, Danforth v. Fisher, 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93; Cordner v. B. & M. R. Co., 72 N. H. 413, 57 Atl. 534; Colwell v. Ætna Bottle & Stopper Co., 33 R. I. 531, 82 Atl. 388; Patterson v. Kates (C. C.) 152 Fed. 481; Fleischner v. Durgin, 207 Mass. 435, 93 N. E. 801, 33 L. R. A. 79, 20 Ann. Cas. 1291; Symington v. Sipes, 121 Md. 313, 88 Atl. 134, 47 L. R. A. (N. S.) 662; Morier v. Railway Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; Foster-Herbert Co. v. Pugh, 115 Tenn. 688, 91 S. W. 199, 4 L. R. A. (N. S.) 804, 112 Am. St. Rep. 881.

In Colwell v. Ætna Bottle & Stopper Co., supra, a case very similar to the case at bar, the court said:

"When he (the chauffeur) first arrived at the garage on Bradford street, it was his duty, then, to take the automobile into the garage, and wash it, and put it up for the night. That was all that he was instructed or expected to do. He had no authority, either express or implied, to use the machine for the benefit of another employé, or for his own convenience in going to get his supper. His use of the automobile from the time he left the Bradford Street garage, and during the whole circuit that he made from that point to Potter's avenue, and from there to the restaurant on Westminster street, and from there back to the Bradford Street garage, was unauthorized and beyond the scope of his employment."

[3] Without citing further authorities, it is sufficient to say that we find that the trial court did not err in directing a verdict for defendant upon the facts shown. This conclusion is reached with the knowledge that the entire testimony upon the question of the instructions given to the chauffeur came from the lips of defendant and his wife, who both may be said to be interested parties. The testimony of appellee and his wife was positive and unequivocal, nor is there any circumstance disclosed in the record tending to discredit or impeach such testimony. See Felts v. Bell County, 103 Tex. 616, 132 S. W. 123; Malone v. Bank, 162 S. W. 369; Christensen v. Christiansen, 155 S. W. 995; Brooks v. Davis, 148 S. W. 1107; Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788; Starkey v. Wooten Gro. Co., 143 S. W. 692; Friedman v. Peters, 18 Tex. Civ. App. 11, 44 S. W. 572.

Finding no reversible error, all assignments of error are overruled, and the judgment of the trial court is affirmed.