## Keck's Administrator v. Louisville Gas & Electric Company, et al.

(Decided February 15, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1.  Master and Servant—Dangerous Instrumentality—Motorcycle.—A motorcycle is not a dangerous instrumentality within the rule requiring the master who has entrusted such an instrumentality to his servant, to respond in damages for its negligent use.

2.  Master and Servant—Injury to Third Person—Scope of Employment—Liability of Master.—A gas and electric light company

which furnished motorcycles to its trouble men for use in answering calls while on duty, is not liable for injuries to a third person caused by the negligence of one of such employes while using one of its motorcycles for the sole purpose of reaching his home after his hours of service had ended, even though the machine was used for that purpose with the knowledge and acquiescence of the company.

HUBBARD & HUBBARD for appellant.

MATT O'DOHERTY for Louisville Gas & Electric Company, and J. W. FOWLER, JR., for Roach, appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On January 26, 1916, Gustave Nelson Keck, an infant seven years of age, was struck and killed by a motorcycle belonging to the Louisville Gas & Electric Company, and ridden by Walter Roach, one of its employes. This suit was brought by administrator of the decedent to recover damages for his death. The Louisville Gas & Electric Company defended on the ground that at the time of the accident, its co-defendant, Walter Roach, was operating the motorcycle solely for his own purposes and not in the service or the performance of any duty owing to it. At the conclusion of the evidence, the trial court directed a verdict in favor of the Louisville Gas & Electric Company, and thereupon the action was dismissed as to Roach. Plaintiff appeals.

The facts are as follows: Since the month of May, 1912, Roach had been in appellee's employ as "an incandescent trouble man." The company employed both night and day men for this service. It was their duty to answer calls that might come from its patrons about trouble with the wires or lights in their residences. The company's headquarters were at Seventh and Ormsby avenue. Roach was a day man. His hours of service were from 7 o'clock a. m. to 8 o'clock p. m. In order that they might properly attend to their duties, the incandescent trouble men were furnished by the company with motorcycles. The company had a garage at Seventh and Ormsby avenue where its motorcycles and autos were kept when not in use. On the evening of the accident, Roach quit work at 8 o'clock p. m. A few minutes later he left the company's shop at Seventh and Ormsby avenue and started on his way home riding one of the company's motorcycles. He lived on Eighteenth street near Hill street, about a mile from Seventh and Ormsby avenue.

When Roach reached a point on Eighteenth street, some distance south of Dumesnil street, decedent and other children were playing a game called "Ispy." The decedent was "it," and by the rules of the game he was required to stand at the "base," which was on the west side of Eighteenth street, with his eyes covered until his playmates found their hiding places. Just before Roach came along on the motorcycle, the decedent had crossed to the east side of Eighteenth street. While standing there, one of the boys hollowed "free," on the west side and started for the base. Thereupon decedent started to the west side and came in contact with the motorcycle. He was thrown some distance and received injuries from which he died.

There was no competent evidence tending to show that the incandescent trouble men were authorized by the company to ride the machines home in order that they might answer calls while off duty. There was evidence, however, that Roach and the other trouble men occasionally rode the machines home with the knowledge and acquiescence of the company's employees superior in authority to them. It will thus be seen that the question for decision is whether the company is liable for the negligence of an employee while using one of its motorcycles with its knowledge and acquiescence solely for his own convenience, while he was at liberty from the service and was not in the performance of any duty which he owed to the company.

We perceive no reason for applying the rule regulating the care and protection of dangerous instrumentalities. Under that rule, railroad companies cannot entrust their engines, cars, or other dangerous instrumentalities to their employees even for the purpose of going to and from their homes without being responsible for injuries caused by the negligent use of such instrumentalities. L. & N. R. Co. v. Walker's Admr., 162 Ky. 209, 172 S. W. 517; Fletcher v. Baltimore & Ohio Southwestern Ry. Co., 168 U. S. 135; East St. Louis Ry. Co. v. Reames, 51 N. E. 68. We are not prepared to say that a motorcycle is a dangerous instrumentality within the meaning of that rule. In our opinion it is in the same category with automobiles, in that it is not inherently dangerous, but becomes dangerous only when negligently operated. Hence we conclude that the company can not be held liable on the sole ground that Roach used the machine with its

knowledge and acquiescence. Tyler v. Stephan's Admr., 163 Ky. 770, 174 S. W. 790.

There being no liability on the ground that the company entrusted Roach with a dangerous instrumentality, it follows that the company's liability depends on whether the relation of master and servant existed at the time of the accident. The liability of the master for the negligence of the servant proceeds from the maxim *"qui facit per alium facit per se."* In other words, where the servant is acting for the master and in his stead, the effect is the same as if the act had been performed by the master in person. The test in every case is, was the servant acting for his master or for himself? If he acts in the furtherance of his master's business, he acts for the master. If he acts in the furtherance of his own business or pleasure, he acts for himself. Applying these principles to the case under consideration, we find that Roach's working hours ended at eight o'clock p. m., and the accident happened after that time. He was then at liberty from the service. In riding the motorcycle home, he used it solely for his own convenience and not for the purpose of performing any duty which he owed to the company. Under these circumstances he was acting for himself and not for the company, and the company can not be held liable for his negligence. Nor does the fact that he was then using the company's machine with its knowledge and acquiescence affect the question. Under the best considered authorities, the liability of the master does not turn on the fact that the servant was then using the master's property but on whether he was using it in the furtherance of the master's business. Tyler v. Stephan's Admr., *supra;* Sullivan v. L. & N. R. R. Co., 115 Ky. 453; Hartley v. Miller 165 Mich. 115; Riley v. Connable, 214 N. Y. 586; Douglas v. Hurson, 127 N. Y. Supp. 220; Slater v. Advance Thresher Co., 97 Minn. 305. The case of Reynolds v. Denholm, 100 N. E. (Mass.) 1006, does not conflict with the above rule. There the chauffeur lived in the defendant's house. He had no particular hours of service but was subject to orders at all times. He took his meals at one place and his laundry at another, each place being about half a mile distant. Both his meals and laundry were paid for by defendant as a part of his wages. He often used the auto for the purpose of going to his meals and getting his laundry. On the evening of the accident, he had ridden to his supper in the automobile and after supper was on his way to get his

laundry when the accident occurred. After getting his laundry, it was his duty to return to the house to await orders. These facts were held sufficient to make it a question for the jury whether the chauffeur was acting in the scope of his employment at the time of the accident. Judgment affirmed.