PIERCE–FORDICE OIL ASS'N v. BRADING. (No. 8945.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 22, 1919. On Motion for Rehearing, April 5, 1919.)

1. MASTER AND SERVANT ⬨⬨⬨305 — LIABILITY FOR SERVANT'S TORT—DEVIATION.

If a servant's deviation from his instructions amounts to an entire abandonment of the service, the master is not liable for injuries by the servant during such deviation; but if the deviation is a mere incident to a duty of the service, and after termination of it authorized service is resumed, the master is liable.

2. MASTER AND SERVANT ⬨⬨⬨302(6) — LIABILITY FOR TORT OF SERVANT—DEVIATION.

Where local manager of company started on trip to post office in company's automobile with another employé to mail report to company, a duty of his employment, and, after making a stop on the other employé's personal business, started to go on, and negligently injured a pedestrian, the company was liable, though, after mailing the report, he intended to journey on to his home, and though the use of the automobile was after business hours.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by J. A. Brading against the Pierce-Fordice Oil Association. From a judgment for plaintiff, defendant appeals. Affirmed.

Martin, Bullington, Boone & Humphrey, of Wichita Falls, for appellant.

Weeks & Weeks and R. P. Mathis, all of Wichita Falls, for appellee.

DUNKLIN, J. J. A. Brading was run over and injured by an automobile in Wichita Falls driven by J. E. Ward, an employé of the Pierce-Fordice Oil Association, and recovered a judgment against the association for damages by reason of such injury, from which judgment the association has prosecuted this appeal.

The defendant association was engaged in selling oil, gasoline, and other products of petroleum in the city of Wichita Falls, where it established a place of business, and J. E. Ward was in general charge of all its business transacted in that city. The association furnished Ward an automobile for use in the discharge of his duties. Appellant maintained a warehouse in Wichita Falls,

of which L. S. Prince was in charge. On the night of December 30, 1916, Prince and Ward worked until about 10 o'clock making up an invoice of the stock of goods belonging to defendant, to be mailed to the company's office at Ft. Worth. It was one of the duties of Prince and Ward to prepare and mail the invoice in time for it to reach the company's office by the end of the month, and about 10 o'clock at night, and as soon as the invoice was finished, they started with it in the automobile for the purpose of going to the post office and there depositing it in the mail, which was later done. A few days prior thereto Prince had left his overcoat upon the train, and a friend who had found it had notified him that it was in the express office at the railway station, and on the trip to the post office Ward stopped the car near the passenger depot in order for Prince to get the coat. The stop was made on what is known as Eighth street, and after Prince alighted from the car Ward drove it through an alley to Ninth street, and there waited for Prince near the edge of the passenger shed. When Prince joined him and got into the car, it became necessary to run the car backward, on account of the proximity of other vehicles waiting at the station. While the car was being run backward, it ran over Brading, who had just stepped off the passenger platform and was out in the street.

The case was tried before a jury, who returned a verdict upon special issues submitted. The findings of the jury, stated in narrative form, were as follows:

(1) At the time plaintiff was struck by the automobile, Ward, in operating the machine, was performing one of his duties as agent for the defendant, and was then using the machine in connection with the defendant's business.

(2) Ward drove the machine backward at an excessive rate of speed, without giving any signal that he was about to do so, and without looking around to observe whether or not there was danger of striking any one with the machine, and in driving the machine backward he drove it in an improper direction.

(3) Such action on the part of Ward constituted negligence.

(4) And such negligence was the proximate cause of plaintiff's injury.

(5) Plaintiff did not know that the automobile was about to be run backward. He used *ordinary care* to see and hear the machine, but did not see or hear it as it approached him, and he could not by the exercise of ordinary care have foreseen that the automobile was going to be run backward at the time and in the manner it was backed.

(6) Plaintiff was not guilty of any negligence contributing to his injury.

(7) As a result of plaintiff's injury he sustained damages in the sum of $2,750.

(8) The place where plaintiff was struck by the automobile was customarily used by pedestrians.

The only contention made by appellant, by different assignments of error, briefly stated, is that the evidence showed conclusively that at the time of plaintiff's injury Ward was not engaged in the performance of any of the duties of his employment by the defendant, but was on a private errand of his own and of Prince, and therefore defendant was not liable for his negligence.

The following facts were conclusively established by the proof:

The accident occurred December 30, 1916. On September 1st next preceding that date Ward received from the defendant a written notice reading as follows:

"The use of company cars after working hours, or on Sundays and holidays, is absolutely prohibited, and you are hereby notified that in future you must not under any circumstances use company cars except during business hours in the transaction of company business. * * * When the trucks or automobiles are not in actual service transacting company business, they must be kept in the company garage at our plant, and under no circumstances used by you personally, or any of our employés at your agency."

Contrary to said instructions, Ward did not keep the car in defendant's garage, but kept it at his home at night and at all other times when it was not in use. He used it in the discharge of the duties of his employment at all times, but he rode in it from his home to his place of business every morning, back to his home for dinner at noon hour, from there to his business in the afternoon, and again to his home at night. He also used it in carrying the company's mail to the post office. He lived about six blocks from his place of business. He was in general charge of defendant's business in Wichita Falls. No objection was ever made by the company to the violation of its written instructions with respect to the use of the machine, although he testified that he did not know whether or not the company was informed of such violation; neither did any other witness testify that such knowledge was conveyed to defendant's officers in Ft. Worth.

There may have been another route from the warehouse to the post office a little more direct than the route pursued on the night of the accident, which was by way of the railway station; but, if there was any difference, it was very slight. After depositing the invoice in the post office, Ward drove the automobile to his home, and there kept it for the night. When he left the warehouse, he intended to go to his home after he had mailed the invoice at the post office.

Appellant insists that it was not liable for Ward's negligence, which resulted in

plaintiff's injury, first, because the use of the automobile to go to the post office was incidental only to Ward's trip home, which was clearly forbidden by his employer, who also forbade him the use of the car after business hours or for the convenience of any other employé; second, because, even though it should be said that the trip to the post office was within the scope of Ward's employment, yet the stopping of the car at the railway station for the accommodation of Prince alone, and not in furtherance of the interests of the company, was such a turning aside and deviation from the duties of his employment as to excuse appellant from liability for such negligence.

In support of the first proposition the following are some of the authorities cited by appellant: Keck's Adm'r v. Louisville Gas & Elec. Co., 179 Ky. 314, 200 S. W. 452, L. R. A. 1918C, 654; St. L., I. M. & S. Ry. Co. v. Robinson, 117 Ark. 37, 173 S. W. 822; Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790; Eakin's Adm'r v. Anderson, 169 Ky. 1, 183 S. W. 217, Ann. Cas. 1917D, 1003; Lotz v. Hanlon, 217 Pa. 339, 66 Atl. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. Rep. 922, 10 Ann. Cas. 731. In support of the second proposition, above stated among others, the following authorities are cited by appellant: .G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367; Hill v. Staats, 187 S. W. 1039; Id. 189 S. W. 85; Butler v. Gulf Pipe Line Co., 144 S. W. 340; Lotz v. Hanlon, 217 Pa. 339, 66 Atl. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. Rep. 922, 10 Ann. Cas. 731; Jones v. Hoge, 47 Wash. 663, 92 Pac. 433, 14 L. R. A. (N. S.) 216, 125 Am. St. Rep. 915; Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790.

Many of the authorities noted, as well as others, are cited in support of both propositions. We shall not undertake to review the authorities at length, as we believe most of them, to say the least, are distinguishable from the present case by reason of a difference in the facts. While in all of the cases cited the master was held not liable for the injury inflicted through the negligence of the servant, yet in many of them the trip, during which the injury complained of was inflicted, was made wholly for the convenience of the servant, and was in no manner connected with the business of the master. In some of the other cases there was a clear deviation from the duties of the servant, during which deviation the injury was inflicted. In the case of Railway Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367, our Supreme Court held that the railway company was not liable for the death of one of its employés, caused by having compressed air turned on him by another employé as a practical joke, while using such air in discharging the duties of his employment. In the course of the opinion in that case, after reviewing many authorities, the following is said:

"It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master, or be regarded as the personal tort of the servant alone. It is now settled, in this state, at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty and in the prosecution of the master's' work. But when he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such action."

In the case of Whimster v. Holmes, 177 Mo. App. 130, 164 S. W. 236, by the Kansas City Court of Appeals of Missouri, Presiding Justice Ellison has given an extended and interesting review of the authorities bearing upon similar cases to the present suit. It was held in that suit that the owner of an automobile could not escape liability for an injury inflicted through the negligence of his chauffeur merely because at the time of the injury the servant had deviated from the instructions of the master, if it could be said that at the time of the injury the servant was in the performance of duties in the scope of his employment. In the course of the opinion the following is quoted with approval from Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361:

"If the servant in going extra viam is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own. Thus in Patten v. Rea, 2 Com. Bench (N. S.) 605, the servant started out on business of the master, and also to see a doctor on his own account. While on his way to see the doctor, he negligently drove against a horse and killed it, and the master was held responsible."

To the same effect are many other authorities cited in the same case.

[1, 2] According to the weight of the authorities, as we construe them, the test of liability of the master for an injury inflicted through negligence of his servant, while he is acting contrary to the master's instructions, is to be determined as follows: If the deviation from such instructions amounts to an entire abandonment of the master's service, then the master is not liable; but if such deviation is a mere incident to the discharge of a duty which the servant is performing at the time such departure occurs, and after the termination of which authorized service

is resumed, then the master is liable. To excuse the master under the circumstances last instanced would be, as said by Presiding Justice Ellison in Whimster v. Holmes—

"little short of a statement that so long as an employé keeps within the orders of his employer he is in line of his employment, but so soon as he violates an order he is out of it. That would come near meaning that no liability would be incurred by an employer for the wrong of his servant, unless he ordered him to commit the wrong."

And applying that reasoning to the facts of that case, the court continued as follows:

"It was a part of the chauffeur's service to take the machine home, and that he was slow about it, or went in indirect ways, does not alter the matter so long as he was in pursuit of that object."

So, in the present suit, the trip of Ward to the post office in the automobile to mail the report to his superior officers in Ft. Worth was one of the duties of his employment, and he was resuming that journey after the temporary stop at the railway station when he ran the machine over the plaintiff. Hence it cannot be said that the operation of the machine at the time of the injury was a departure from and an abandonment of the master's service.

Under the varying facts of different cases it is not always easy to determine whether a certain departure by the servant from instructions of his master, resulting in injury to another, amounts to such an abandonment of the service as to excuse the master from liability, or is merely an incident to the performance of an authorized service rendering the master liable. And this difficulty, rather than a difference of view as to the controlling principle involved, seems to be the occasion for apparently conflicting decisions in reported cases.

We conclude, further, that Ward's intention to continue his journey to his home in the automobile after mailing the papers at the post office did not fix and determine the legal character of his entire trip after leaving the warehouse as a trip exclusively for his own convenience, and not in the interest of the company, as insisted by appellant. And we overrule the further contention that the use of the automobile after 10 o'clock at night was a use after business hours, and therefore prohibited by the defendant in its instructions to Ward. If it was Ward's duty to assist in the preparation and mailing of the invoice during the night of the accident, which appellant does not deny, then we perceive no room for reasonable doubt that the trip was made within business hours, especially in the absence of any proof that the performance of such services at that hour of the night was forbidden by the defendant.

For the reasons stated, all assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

The place where the car was stationed by Ward while waiting for Prince to return with his overcoat was between the alley and the railway station on a vacant plot of ground, and Brading was run over while the car was being run backward from the spot where it stood into the alley, and he was not out in the street when run over. This finding is made to correct the erroneous statement in our opinion on original hearing to the effect that Brading was run over on the street after he stepped from the passenger platform. But that error could have no bearing upon the conclusions reached on original hearing.

With that correction, the motion for rehearing is overruled.