## LUCAS v. FRIEDMAN.

Court of Appeals of District of Columbia.

Submitted January 6, 1928. Decided February 6, 1928.

No. 4611.

1. **Master and servant** ⚏⟹302(1)—**Master is not liable for servant's acts without authority and outside scope of employment.**

Master is liable for act of his servant within scope of his employment, but he is not liable for an act done without his authority and outside scope of employment.

2. **Master and servant** ⚏⟹305—**Master, as matter of law, held not liable for injuries inflicted by servant driving automobile in complete disregard of instructions on personal mission.**

Employer *held*, as matter of law, not liable for injuries to plaintiff inflicted by employee while traveling in complete disregard of employer's instructions in opposite direction, to take friends to high school.

Appeal from the Supreme Court of the District of Columbia.

Action by Maxwell Lucas, an infant, by his mother and next friend, Lena B. Lucas, against Harry Friedman. From a judgment on a directed verdict for the defendant at the close of plaintiff's evidence, plaintiff appeals. Affirmed.

W. J. Lambert, R. H. Yeatman, and A. F. Canfield, all of Washington, D. C., for appellant.

F. F. Nesbit, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District of Columbia, on a directed verdict for the defendant at the close of plaintiff's evidence, in an action for personal injuries.

Defendant conducted a grocery store at Fourth and T Streets, N. W. in this city. In his employ was a young man by the name of Richard Dabney, who worked around the store and delivered groceries in defendant's Ford touring car. On the occasion in question, Dabney was instructed by his employer to take the automobile and proceed to a place near 1315 V Street N. W., where he was to get defendant's intended father-in-law and take him to Center Market to buy produce for defendant. Dabney started out with baskets in the car, but, instead of going north two blocks and west nine blocks, as would have been necessary, had he proceeded to his objective, he went to Shaw High School (a junior high school for colored pupils), at First and M Streets N. W., about three blocks east and seven blocks south of the store. This was done by Dabney for the purpose of interviewing two friends, who were attending the school, with reference to hiring an automobile for the use of the three during the Easter holidays. After discussing this matter, the two boys got in the car with Dabney, who started to take them to Armstrong High School, located at P street, between First and Third streets N. W., "and from there he was going" to 1315 V street, where defendant had directed him to go. While driving toward the Armstrong High School, Dabney collided with and injured the plaintiff.

It was neither averred nor claimed that any negligence attached to the employment of Dabney by the defendant, but it was alleged and contended that at the time of the accident he was acting in the business of his employer. There was no controversy as to the facts, and the court below, being of the view that, "as matter of law, those facts establish that the driver of the automobile deviated from his master's business" and had "gone off on some purpose of his own," directed a verdict for the defendant.

[1, 2] Can it be said that fair-minded men might honestly differ as to whether Dabney, at the time of the accident, was engaged in performing the duties assigned him by the defendant? The master is liable for the act of his servant within the scope of his employment, but he is not liable for an act done without his authority and outside the scope of his employment. McCarthy v. Timmins, 176 Mass. 378, 381, 59 N. E. 1038, 86 Am. St. Rep. 490. In that case, where a verdict for the defendant was directed at the close of plaintiff's evidence, the defendant was the proprietor of a public hack in the city of

Boston. The driver, his employee, at the close of his day's work and for purposes of his own, instead of proceeding to the stable, as directed, turned out of his course and drove a considerable distance in an opposite direction, where he left his horses unattended, as a result of which the accident occurred. The court, in upholding the action of the trial judge, said:

"When he [the driver] reached Massachusetts avenue, it is plain that his only purpose in turning southward, instead of northward, and going 758 feet to Dundee street, was not only to deviate from the regular way of reaching the stable, but was for a purpose of his own, namely, to get a drink. He was upon no errand of his master, and this journey was not for the purpose of getting to the stables, even by a circuitous route, or, to use the language of Hoar, J., in Howe v. Newmarch, 12 Allen, 49, 57, he was doing an act wholly for a purpose of his own, disregarding the object for which he was employed, and not intending by his act to execute it, and not within the scope of his employment. In such case the defendant should not be held answerable."

In Fiocco v. Carver, 234 N. Y. 219, 137 N. E. 309, the defendants sent a truck load of merchandise from Manhattan to Staten Island. It was the driver's duty, when he had made delivery, to return the truck to the garage at Twenty-Third street and Eleventh avenue, on the west side of the city, but instead he went to Hamilton street, on the east side, to visit his mother. A neighborhood carnival was in progress in the street. At their request he took aboard a crowd of boys, dressed in fantastic costumes, and with them made a tour of the district, returning to the point where he had taken them aboard. It then was his purpose, according to his testimony, to go back to the garage. In starting his truck a child was injured, and the jury was permitted to find that at this time the driver was acting in the course of his employment. This ruling was upheld by the Appellate Division, but the Court of Appeals reversed it, holding that a verdict should have been directed for the defendants. The court found that the fact that the driver's "thoughts were homeward bound" at the moment of the accident was not enough, in view of all the circumstances, to terminate the temporary abandonment and put him back into the sphere of service, saying:

"The dominant purpose must be proved to be the performance of the master's business. Till then there can be no presumption of a relation which has been broken and suspend-

ed. * * * The field of duty, once forsaken, is not to be re-entered by acts evincing a divided loyalty and thus continuing the offense. Many of the illicit incidents of the tour about the neighborhood persisted. The company of merrymakers was still swarming about the truck. The servant was still using the property of the master to entertain his friends and help the merriment of the carnival. The presence of these merrymakers was the very circumstance that had prompted the little boy to jump upon the truck, and make himself a party to all the fun and frolic. Add to this that the truck was still far away from the route which it would have traveled if the servant had followed the line of duty from the beginning. * * * We are not dealing with a case where, in the course of a continuing relation, business and private ends have been coincidently served. We are dealing with a departure so manifest as to constitute an abandonment of duty, exempting the master from liability till duty is resumed."

See, also, Bennett v. Busch, 75 N. J. Law, 240, 243, 67 A. 188; Eakin's Adm'r v. Anderson, 169 Ky. 1, 183 S. W. 217, Ann. Cas. 1917D, 1003; Good v. Berrie, 123 Me. 266, 122 A. 630; 39 C. J. 1297; 18 R. C. L. 795–797.

In the present case, Dabney was not acting under a roving commission from his employer, but under definite instructions, which required him, if he followed them, to go north and west. Instead, in complete disregard of his instructions, he went almost as far in a substantially opposite direction to the Shaw School, and for a purpose entirely his own, namely, to interview two friends. After the interview he took these friends aboard, not for the purpose of going to his original objective, but for the declared purpose of taking these friends to the Armstrong High School, on the way to which the accident occurred. It thus appears that there was no termination of the departure from or resumption of the defendant's business. On the contrary, the act was one solely in the interest of the employee. There was, therefore, no question for the jury.

Our attention has been directed to our decision in Mandes v. Midgett, 49 App. D. C. 139, 261 F. 1019, where the defendant, who was engaged in the lunchroom business, had engaged a man to deliver supplies to several of his restaurants, located in different sections of the city, and furnished an automobile for that purpose. After making deliveries, the servant went to his own place of business, and from there proceeded to a gasoline fill-

ing station to procure a supply of gas for his employer's car. We held that the question whether at that time the servant was engaged in the performance of his duties was for the jury, saying: "We think the evidence fully supports the inference that the trip to the filling station was incidental to the use of the automobile in connection with the performance of defendant's business." We find nothing in that ruling inconsistent with the ruling made in the present case.

The judgment is affirmed, with costs.

Affirmed.