## Potter's Administratrix v. Mansard Garage & Service Station.

(Decided April 24, 1931.)

G. D. MILLIKEN for appellant.

LAWRENCE B. FINN and HUMPHREY, CRAWFORD and MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On November 22, 1929, between 5:30 and 6 p. m., Sidney Potter, a boy twelve years of age, was struck on the streets of Bowling Green by a Buick car operated by Leroy Loving and killed. Appellant was thereafter appointed administratrix of Sidney Potter's estate, and then brought this suit against Will Loving, who owned the Buick, and the appellee, Mansard Garage & Service Station, for damages for the death of her decedent. Will Loving settled with appellant by paying her the sum of $1,005, and he took a release from her releasing him and Leroy Loving from all further liability because of the

death of Sidney Potter. The release, however, expressly reserved whatever rights appellant had against the present appellee. The appellant sought to fasten liability for the death of Sidney Potter upon the appellee on the theory that Leroy Loving, at the time he ran over her decedent, was in the employ and on the business of the appellee. The appellee defended on the theory that, although Leroy Loving was one of its employees, yet, at the time of the accident, he had borrowed the Buick from Will Loving, its owner, for the purpose of going home to supper, and was on that journey of his own, doing no service for appellee, when he struck and killed the boy. Although the appellee put in issue the alleged negligence of Leroy Loving which caused the accident, it made no serious defense along this line, confining itself in the main to the question whether Leroy Loving at the time of the accident was in its service or not. The jury found for the appellee, and, from the judgment entered on that verdict, this appeal is prosecuted.

In her original brief, appellant relied upon these grounds for reversal, error in the admission and rejection of testimony, and error in the court admonishing the jury as to the argument of her counsel. In her reply brief, she insists that, as appellee had, in its brief, stated that it based its defense in the trial court solely on the proposition that Leroy Loving was not on its service at the time of the accident, she was entitled to a peremptory instruction fastening liability for the accident upon appellee.

Considering this last proposition first, we find that these facts were proven by the appellant and appellee. Will Loving, the owner of the Buick car, was in the employ of the appellee, as was also Leroy Loving. At times, when service calls came in and the regularly provided service cars were busy, this Buick was used to make such calls. The working hours of Leroy Loving seem to have extended over into the the evening, and he was given an hour off each night for his supper. The appellee did not furnish him any method of transportation to and from his home for meals. He often, however, with permission used their service cars for this purpose, and now and then borrowed the Buick from Will Loving to go home, especially when, as on the night of the accident, it was raining, as the Buick car was a closed one. The appellee's evidence was to the effect that Leroy Loving was on his way home to supper when he ran into

the Potter boy. He had expressly borrowed the car from Will Loving for the purpose of making this trip, and was doing no service whatever for the appellee. It is conceded that, just before starting home, Leroy Loving had used the Buick for the purpose of going to a hardware store to get some tacks to use in laying some linoleum in appellee's garage. For the appellant, it was shown that just before the trial Leroy Loving had stated to appellant's witnesses that, at the time of the accident, he was hurrying back to appellee's garage from a service call. Appellee in its brief says that this evidence was incompetent, being the admissions of an agent made out of court and being no part of the res gestae. But they were introduced without objection on the part of the appellee and without a motion to withdraw them from the jury when appellee discovered on its cross-examination that they were no part of the res gestae. Appellant also lays stress on a statement that Leroy Loving made while testifying in the case to the effect that he borrowed the car on the occasion in question because he was in a hurry to get back. However, the cause for his hurry was not so as to save his employer any time or to return more speedily to his tasks, but because he wished to get to the barber shop and get "cleaned up"; it being Saturday night, before his supper hour expired.

On this statement of the evidence, it is clear appellant was not entitled to a peremptory instruction on this question of agency. If appellee's evidence was to be believed, Leroy Loving was not on any service for it at the time of the accident. It occurred during his free time, when he was on a journey of his own in a car borrowed from a third party for that purpose. In this aspect, the case cannot be distinguished from that of Keck's Adm'r v. Louisville Gas & Electric Co., 179 Ky. 314, 200 S. W. 452, 453, L. R. A. 1918C, 654. In that case, Roach, who worked for the gas company as a trouble man, and was furnished with a motorcycle to use in the discharge of his duties, was, after his working hours were over, riding home on the motorcycle, when he ran over and killed Gustave Keck. His use of the motorcycle to go home was with the consent of the gas company. In holding the gas company not liable for Roach's negligence, we said:

"The liability of the master for the negligence of the servant proceeds from the maxim, 'Qui facit

per alium facit per se.' In other words, where the servant is acting for the master and in his stead, the effect is the same as if the act had been performed by the master in person. The test in every case is: Was the servant acting for his master or for himself? If he acts in the furtherance of his master's business, he acts for the master. If he acts in the furtherance of his own business or pleasure, he acts for himself. Applying these principles to the case under consideration, we find that Roach's working hours ended at 8 o'clock p. m. and the accident happened after that time. He was then at liberty from the service. In riding the motorcycle home, he used it solely for his own convenience, and not for the purpose of performing any duty which he owed to the company. Under these circumstances, he was acting for himself and not for the company, and the company cannot be held liable for his negligence. Nor does the fact that he was then using the company's machine with its knowledge and acquiescence affect the question. Under the best-considered authorities, the liability of the master does not turn on the fact that the servant was then using the master's property, but on whether he was using it in the furtherance of the master's business. Tyler v. Stephan's Adm'x [163 Ky. 770, 174 S. W. 790], supra; Sullivan v. L. & N. R. Co., 115 Ky. 453, 74 S. W. 171, 24 Ky. Law Rep. 2344, 103 Am. St. Rep. 330; Hartley v. Miller, 165 Mich. 115, 130 N. W. 336, 33 L. R. A. (N. S.) 81; Reilly v. Connable, 214 N. Y. 586, 108 N. E. 853, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656; Douglass v. Hewson, 142 App. Div. 166, 127 N. Y. S. 220; Slater v. Advance Thresher Co., 97 Minn. 305, 107 N. W. 133, 5 L. R. A. (N. S.) 598. The case of Reynolds v. Denholm, 213 Mass. 576, 100 N. E. 1006, does not conflict with the above rule. There the chauffeur lived in the defendant's house. He had no particular hours of service, but was subject to orders at all times. He took his meals at one place and his laundry at another; each place being about half a mile distant. Both his meals and laundry were paid for by defendant as a part of his wages. He often used the auto for the purpose of going to his meals and getting his laundry. On the evening of the accident, he had ridden to his supper

in the automobile, and after supper was on his way to get his laundry, when the accident occurred. After getting his laundry, it was his duty to return to the house to await orders. These facts were held sufficient to make it a question for the jury whether the chauffeur was acting in the scope of his employment at the time of the accident."

See, also, Bradley v. Schmidt, 223 Ky. 784, 4 S. W. (2d) 703, 705, 57 A. L. R. 1100, and Saunders' Ex'rs v. Armour & Co., 220 Ky. 719, 295 S. W. 1014, 1015.

Appellant would distinguish these cases, and would bring the instant case on appellee's evidence within a line of cases where the employer has been liable when his employee at the time of the accident was on a journey of mixed purposes, partly that of his master and partly that of his own, because, as she says, Leroy Loving said on the witness stand that he was using the car on the night of the accident because he was in a hurry to get back. She argues that he was trying to save time on his dinner hour in order to get back to his work ahead of time, and so was serving his master as well as himself when the accident happened. She cites 42 C. J. 1107, 1109, and the cases cited in the notes. But, without, stopping to discuss her authorities, we find that Leroy Loving did not state that he was in any hurry to get back in order to save his master any time but in order that he could get shaved and get "cleaned up" before his supper hour expired. Appellant, therefore, does not bring the instant case within the authority she relies upon. Of course, if her evidence was to be believed, Leroy Loving was on a journey of his master at the time of the accident, but whether her evidence or that of the appellee was to be believed was a question for the jury, and she was not entitled to a peremptory instruction on this question of agency.

In support of her position that the court erred in rejecting competent testimony, she insists that it was competent for her to show that, at the time of the accident, the car had not been licensed by Will Loving, its owner, for the year 1929, but was equipped with the dealer's license of the appellee. The appellant had proved by the county clerk that Will Loving had licensed the car in 1928 and 1930. The court declined to allow appellant to prove that he had failed to license it in 1929 and that he had said that during that year he had

used the dealer's license of appellee. If the matter of what license the car was using had any bearing in the case, appellant, though not permitted to establish it, got the benefit of it, because appellee in its questioning of Will Loving when he was on the stand brought out all the facts about his use of appellee's dealer's license in 1929 and his explanation of that use, which was that he had expected to sell the car, and so had failed to obtain a license for it in 1929. The jury heard all the evidence which appellant says was competent.

Appellant says that the court erred in permitting the appellee to read to the jury the release which appellant had given to Will and Leroy Loving. It will be remembered that this release expressly reserved whatever rights appellant had against the appellee because of the accident in question, hence the reading of the release to the jury did not mislead it into thinking appellee was also released. In its instructions to the jury, of which appellant made no objection, and to which she reserved no exception, the court told the jury that if it found for the appellant to credit whatever damages it thought Sidney Potter's estate had been caused by his death by the amount paid appellant by Will Loving. In this state of the case, what we said in Standard Sanitary Mfg. Co. et al. v. Brian's Adm'r, 224 Ky. 419, 6 S. W. (2d) 491, 494, is apposite:

"If it is proper to allow the jury to consider the settlement made with one tort-feasor when there is a dispute about it, we fail to see how it would be prejudicial to allow a reference to such settlement in a case where admittedly such settlement had been made.

"In the case of City of Covington v. Westbay, 156 Ky. 839, 162 S. W. 91, this court held that the lower court properly permitted the defendant to plead the amount received in the compromise settlement from the street car company as a credit on whatever judgment might be obtained against it. The court then continued:

" 'The jury were authorized to find for plaintiff only in the event that they believed from the evidence that plaintiff's damages exceeded $750, and then to the extent of the excess only.'

"We find no case where this court held that it was, or would be, reversible error to advise the

jury in the instructions of the amount paid by one joint tort-feasor and confined the amount of the recovery to the difference between the total amount of damages and the amount which had been previously paid. Such an instruction, if it should have been given in this case, would not have been considered prejudicial.''

There is no merit in this contention of appellant.

Lastly, she contends that the court erred in the admonition it gave to the jury concerning the argument of her counsel. This admonition was given after her counsel had completed his argument, and when, as he says, he was given no opportunity to explain to the jury his criticized argument or to substitute other argument therefor. She also says the effect on the jury of the court's admonition was very prejudicial to the weight of her counsel's argument. The court admonished the jury with reference, not only to the argument of appellant's counsel, but also to that of appellee's counsel. We are of opinion that the court did not err in its admonition and, if counsel desired, in view of the court's admonition, to argue the case further, he should have made a request for permission to do so.

The judgment is affirmed.