## Wells v. Combs.

(Decided Dec. 1, 1933.)

CRAFT & STANFILL for appellant.

C. A. NOBLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Rebecca Combs, recovered a judgment in the Perry circuit court against appellant and defendant below, J. T. Wells, for the sum of $500.00 as compensation for injuries sustained by her when defendant's truck collided with her on the public highway where it runs through the suburban village of Walkerton, immediately east of the city of Hazard, Ky. Defendant's motion for a new trial having been overruled, he prosecutes this appeal, and by his counsel argues a number of grounds for a reversal of the judgment, the most prominent and chief one of

which is, that the court erred in overruling defendant's motion for a directed verdict in his favor, which was made at both the close of plaintiff's testimony and at the close of all the testimony. Since we are convinced that counsel is correct in that contention, it will be unnecessary to consider or determine any of the other argued grounds to obtain the same relief.

Defendant, at the time of the accident complained of, was a section boss for the Louisville & Nashville Railroad Company, and he resided near the mouth of Lots creek about two and a half miles east of Hazard, and where there was a mining camp of the Darb Fork Coal Company. He owned a small motortruck which was equipped with a dumping bed, and in which he hauled dirt and other substances that his patrons desired to have moved. At the request of the manager of a local baseball team, he procured another bed for his truck, which was equipped to carry passengers, and with it he hauled the members of the baseball team to the grounds on occasions when a game was being played. Near to his residence was a garage owned and operated by one E. J. Thacker, and in which defendant stored his truck when not in use. The accident occurred on Saturday night, April 30, 1932. Defendant was notified on the afternoon of that day that there would be a game of baseball the next day (Sunday), and was requested to equip his truck with the passenger bed so as to be able to carry out his contract to transport the ball players as above indicated. Accordingly, on that afternoon, after receiving such information, he directed his employed driver of the truck, who was a colored man by the name of Noah Howard, to make the necessary change of beds for the truck, which was done.

Following the evening meal, defendant was down at the garage, but the truck as equipped with the passenger bed had not been put into the garage by Howard, and the latter then asked the permission of defendant to drive the truck about two and a half miles farther east to the village of Hardburley, which was located on the same highway, for the purpose of getting a pair of shoes that Howard had left with a shoe cobbler to be repaired. Defendant granted the request, but at the same time instructed Howard to hurry back and put the truck in the garage so as to have both it and himself in readiness to serve the baseball club the next day. How-

ard carried along with him (but without the knowledge or consent of defendant) two other colored men, one of whom was defendant's cook, and who intended to and did spend the night at Hardburley. On arriving in that village, the shoe cobbler could not be located, and, after considerable efforts on the part of Howard to do so, he and his other companions started back on the return trip; but the latter left the bus about one mile east of Thacker's garage, it being the point where he resided.

From thence forward no one was in the truck except defendant's employee, Howard. When he arrived at the garage near which defendant resided he did not stop, but continued his journey to the city of Hazard, Ky., and which carried him through the suburb of Walkerton. Plaintiff was a pedestrian on the highway, and the truck collided with her, producing the injuries of which she complains. Howard claims to have known nothing of the collision until he was later informed of it after he had arrived in the city of Hazard. The sole object and purpose of his continuing his trip to that city was to obtain his personal laundry which he had left (presumably from oversight) at a barber shop located therein. The testimony in the case establishes the facts as so related beyond contradiction. In fact there is no material contradiction as to the facts in the entire record, unless it be upon the extent and seriousness of plaintiff's injury. The testimony also established beyond contradiction that Howard had labored for defendant at different periods covering a space of, perhaps, twelve years; but his last employment, preceding the accident, was only about two months prior thereto. He slept and took his meals at defendant's home, and performed chores around the household as were requested of him when not engaged as a driver of the truck. It likewise appears that, possibly, on one occasion prior to the date of the accident Howard appropriated the truck to go after his laundry, but there is no evidence that he even made that trip (if one was so made) with the consent or knowledge of defendant. Usually Howard would go to Hazard on Saturday afternoons with defendant in the latter's automobile, and would return with his laundry either in a taxicab or by any other means that he saw proper to employ. The only question to be determined under the facts, as

so stated, is whether they produced a submittable case as to defendant's liability for the consequences of the collision.

The principle upon which the liability of the master or employer for the negligent acts of his servant or employee rests is embodied in the maxim, respondeat superior, the literal meaning of which is, "Let the principal be held responsible." It proceeds upon the theory that the master or employer is himself acting at the time by and through his servant or employee, provided the latter at the time of the transaction complained of is then engaged in performing his duties as such servant or employee, and, if so, then the master is performing them through him. It necessarily follows that, if the transaction complained of occurred or happened through an act of the servant or employee when not so engaged, the maxim will not apply so as to render the master or employer liable for the consequences thereof.

Following that maxim, this and other courts are unanimous in pronouncing the master guiltless of his servant's negligence if the latter is functioning exclusively in furtherance of his own individual purpose at the time of his complained of negligent act. Some of the many cases so declaring are Model Laundry v. Collins, 241 Ky. 191, 43 S. W. (2d) 693; Crady v. Greer, 183 Ky. 675, 210 S. W. 167, and others, as well as text authorities cited in those opinions. The two cited cases contain facts very similar to those involved in this record, except they were more conducive toward the conclusion of possible service for the master at the time of the accident involved than is shown by this record. In them the immediate act of driving the automobile of the master or employer had its beginning in a trip essentially within the scope of the chauffeur's employment; but he later departed therefrom for purposes exclusively his own, and his negligent act occurred during such departure; whilst, in this case, none of the uses of defendant's truck from the beginning of the trip were for any purpose of the master, but exclusively for the benefit of Howard, the chauffeur and servant. However, that beginning purpose, though with the knowledge and consent of the master (defendant here), was later departed from by the servant, Howard, and which was not only without the master's knowledge and consent, but against his express direction, and under the doc-

trine of the cited cases defendant, as master and employer, may not be required to respond in damages for the consequences of the collision of the truck with the body of plaintiff at the place, time, and circumstances under which and when it occurred. Compare also the cases of Winslow v. Everson, 221 Ky. 430, 298 S. W. 1084; Wyatt v. Hodson, 210 Ky. 47, 275 S. W. 15; Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576; Eakin's Adm'r v. Anderson, 169 Ky. 1, 183 S. W. 217, Ann. Cas. 1917D, 1003; Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790, and others cited in those opinions.

But, as an original proposition, we would unhesitatingly so conclude if this case was one of first impression, and we were determining it without the aid of the well-established rule approved by the cases supra, since a master or employer is not an insurer of care and prudence on the part of his servant or employee when the latter is engaged in performing individual transactions for his sole personal benefit, and which is true, although the instrumentality producing the injuries was one that was owned at the time by the master or employer and was being operated with his knowledge and consent, but for the exclusive benefit of the employed, and which was true in a number of the cases to which we have referred.

But counsel for plaintiff argues that his client was entitled to a submission of her case to the jury under the principles announced in the case of Potter's Adm'x v. Mansard Garage & Service Station, 238 Ky. 439, 38 S. W. (2d) 233. A reading of that opinion will disclose that the court again approved the rule as announced in the domestic cases supra, but it was therein held that defendant was not entitled to a peremptory instruction because of certain testimony proving statements made by the alleged servant, and to the introduction of which defendant did not object, thereby rendering it competent for the purposes of the case. Such proven statements by the servant in that case clearly indicated that he was serving his master when the inflicted injuries, of which complaint was made, happened. During the course of the opinion, reference was made to the case of Reynolds v. Denholm, 213 Mass. 576, 100 N. E. 1006, and the opinion differentiates its facts from the case under consideration; but in doing so there was no approval of the doctrine as announced by the Massachusetts court in

that case, since its facts were materially different from the one then under consideration by this court, and likewise materially different from those appearing in this record. We were not called upon in that case to either approve or disapprove the Massachusetts opinion, and which that court described as "a close one and seems to have been tried with a hesitating touch on both sides." Furthermore, some of our domestic cases to which we have referred, we again repeat, were much stronger in favor of plaintiff's right to recover of the master than the case now under consideration.

We therefore conclude that the court erred in overruling defendant's motion for a directed verdict in his favor, and the judgment is reversed, with directions to set it aside and for proceedings not inconsistent with this opinion.