## Maynard v. Kentucky & West Virginia Power Co.

(Decided Oct. 2, 1936.)

JOHN T. DIEDERICH and E. POE HARRIS for appellant.

MARTIN & SMITH and A. T. BRYSON for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

The appellant, Nathan Maynard, brought this action against the appellee, the Kentucky & West Virginia Power Company, and also against the Hysteam Coal Corporation, Buck Creek Coal Corporation, and Martin County Coal Corporation, to recover damages for

severe burns received by him as a result of coming in contact with electric wires carrying approximately 2,300 volts. The Buck Creek Coal Corporation and the Martin County Coal Corporation were eliminated from the case at the close of the plaintiff's testimony, and the trial thereafter proceeded against the Hysteam Coal Corporation and the appellee, Kentucky & West Virginia Power Company. Upon submission of the case to the jury, a verdict was returned in the sum of $12,500 against the Hysteam Coal Corporation alone. The appellant filed a motion and grounds for a new trial against the Kentucky & West Virginia Power Company. This appeal is prosecuted from the order of the court overruling the motion for a new trial. No appeal has been taken by the Hysteam Coal Corporation, and we are concerned alone, therefore, with the liability of the power company.

About one week before the accident here complained of, appellant moved into a one-story dwelling house belonging to a man by the name of Steve Dermont, located in what was formerly the town of Himlerville, now known as Beauty. Appellant agreed, under his lease from Dermont, to repair the roof of the dwelling, and he was on top of the house engaged in removing some of the old roofing at the time he came in contact with the wires and was injured.

Some years ago, the Himler Coal Company operated in the town of Beauty and owned a generating plant for the purpose of producing and supplying electricity to its mines and also to the inhabitants of the town. The Himler Coal Company was taken over by the Buck Creek Coal Corporation, and later by the Martin County Coal Corporation, which in turn leased the property to the Hysteam Coal Corporation. About ten or twelve years ago the appellee, Kentucky & West Virginia Power Company, made a contract with the then operators of the coal mine to supply the power necessary to operate the mines and also for domestic use by the residences in the town. In 1932, appellee entered into a contract with the Hysteam Coal Corporation, under which it continued to furnish electricity to the mines and community. The current was delivered through a meter at the old generating plant and there passed into the lines belonging to the Hysteam Coal Corporation. Something over a hundred residences, in addition to the mines, were served through the lines belonging to the

coal corporation. At the point of the accident three wires crossed over the dwelling house in which Maynard lived, coming from the old generating plant, about half a mile or more away, to the mines and town. Two of these wires carried approximately 2,300 volts. The third wire carried the current necessary for lighting purposes in the community and bore a much lower voltage. It is claimed for appellant that the lines had negligently been permitted to sag into dangerous proximity to his roof.

The proof indicates that the Kentucky & West Virginia Power Company had no control over, and made no inspection of, the lines of the Hysteam Coal Corporation beyond the point of delivery of the current at the switchboard and transformers of the generating plant. It is shown without dispute that beyond the generating plant the equipment and lines were within the exclusive control of the coal corporation. It is argued on behalf of the appellant that it was the duty of the Kentucky & West Virginia Power Company to see that lines, particularly those on the outside of buildings, which were exposed, were in good condition before turning a high-voltage electric current into them, and that this duty extended not only to its own lines but to those of the coal corporation, and involved the duty to inspect and maintain these lines in proper condition. It is likewise asserted that the trial court, in instructing the jury, expressly imposed this obligation on the power company as well as on the coal corporation, and it is argued that, whether right or wrong, this instruction was the law of the case, and the verdict of the jury must therefore be wrong and in disregard of this instruction. Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852; City of Madisonville v. Nisbit, 239 Ky. 366, 39 S. W. (2d) 690; Myers v. Cassity, 209 Ky. 315, 272 S. W. 718; Yellow Poplar Lumber Co. v. Bartley, 164 Ky. 763, 176 S. W. 201. It may be said in passing that, by another instruction, the court expressly authorized the jury to find its verdict "against any one or more" of the defendants, but, in the view which we have taken of the case, it is unnecessary to determine whether or not the jury actually followed the instructions of the court. We are of the opinion that the appellee was entitled to have its motion for a peremptory instruction sustained, and it is therefore immaterial whether or not the jury itself found in appellee's favor.

The appellant relies upon the rule of law announced in Thomas' Adm'r v. Maysville Gas Co., 108 Ky. 224, 56 S. W. 153, 53 L. R. A. 147, 21 Ky. Law Rep. 1690, and in Lewis' Adm'r v. Bowling Green Gaslight Co., 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169. In the Thomas Case this court held an electric generating company liable for the electrocution of a pedestrian on a public street resulting from the breaking of a wire belonging to a street car company to which the generating company sold power. A careful reading of the opinion indicates that the Thomas Case is not so broad in its application as subsequent citations of it would seem to imply. The court was careful to point out that, even though the electricity was sold to the street car company by the generating company, the actual control of the current remained with the generating company, and it was actually necessary for the generating company to stop its current before the decedent could be released from the wire with which he had come in contact. Apparently, there was no switch within the control of the street car company by which it could disconnect its lines from those of the power company.

In the Lewis Case an electric company was held liable for the death of a pedestrian who came in contact with a sagging and defectively insulated electric wire belonging to the electric company and strung along a public highway. There was no question there of an intervening distributor of the current. In both cases the injury complained of occurred on a public highway.

The broad doctrine that a generating company is responsible for injuries received by members of the public resulting from the negligent maintenance of the equipment of a distributor, to whom the generating company has sold power and surrendered control of the current passing over the distributor's lines, has been repudiated in other jurisdictions (see 20 C. J. 365, note 87), and, while the Thomas Case has been referred to as laying down this principle, it will be observed that it does not by any means go to this extent. Furthermore, the decision has practically been limited to the facts there involved by subsequent decisions of this court. Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164. In the Smith Case a druggist was electrocuted while handling an electric light attached to the wiring system in his drug store, and it was shown that the wiring within the store

was beyond the control of the electric company. It was held that the electric company was not responsible. In discussing these two cases in the case of Kentucky Utilities Co. v. Sutton's Adm'r, 237 Ky. 772, 36 S. W. (2d) 380, 383, it was said:

> "There is no conflict between the Smith Case and the Thomas Case, and the principle to be deduced from them, considered together, is that there is no duty to inspect a wiring system over which the current of a power company flows, where the company has not the unfettered right of access for the purpose of inspection at all times, and, if there is no duty to inspect, no liability results from a defect in such wiring system, unless the company, with knowledge of such defect, continues to send its current over such wiring system."

The Thomas Case and others following it clearly have no application to the situation presented in the case at bar, and it is unnecessary therefore for us to accept appellee's invitation to consider whether or not the rule there announced is sound, or the duty there imposed upon generating companies unreasonable, in view of subsequent developments in the industry and modern methods of distribution of electricity over far-flung areas. The accident in which Mr. Maynard was injured occurred away from the public highway at a point where appellee owed no duty to inspect under any circumstances and where, indeed, it would have been a trespasser had it undertaken to repair the alleged defective condition. Even if we should apply the rule to the effect that a generating company must satisfy itself that the equipment of a purchaser is in good condition for the reception of its current before turning its power into the lines, we have here a case where it is admitted that the current has been flowing through the system of the coal company and its predecessors almost without interruption for many years, while the sagging of the wire is claimed to have occurred within a comparatively few months. In the absence of knowledge of the alleged defective condition of the wires of the coal company, and in the absence of a duty or right to inspect the wires at the point in question, it is obvious that the appellee has been guilty of no negligence and that its motion for a peremptory instruction should have been sustained.

Judgment affirmed.