## Sharp v. Faulkner.

Oct. 2, 1942.

180

B. B. Snyder, J. C. Bird and C. S. Wilson for appellant.

Golden & Lay for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming.

John W. Faulkner was Jailer of Whitley County and Arthur Mayne was his deputy. On May 10, 1939, Mayne drove the car of Faulkner off the highway at a filling station in Corbin between 8 and 9 o'clock P. M. and struck the plaintiff, John Henry Sharp, who lost a leg as a result of the accident and instituted this action against both Mayne and Faulkner for $14,200. He alleged that Mayne, while acting as agent and employee of Faulkner and while on the latter's business, negligently drove Faulkner's car into him causing his injury. The allegations of the petition were traversed and three trials were had. The first resulted in a hung jury and the second in a verdict for $1,700 against Mayne, the verdict being silent as to Faulkner.

Before the third trial (which was against Faulkner alone) he filed an amended answer averring that the jury had found the plaintiff's damages to be $1,700 in the verdict returned against Mayne and should there be a recovery against him (Faulkner), the amount of damages is res judicata and cannot exceed $1,700. The court entered an order sustaining this plea and adjudged that the only question to be determined on the third trial was whether or not Faulkner was liable as the master or prin-

cipal of Mayne. The court limited the evidence on this trial to this one issue and refused all instructions offered by both parties and instructed the jury on the sole issue of agency.

The verdict was in favor of the defendant, Faulkner, and on this appeal the plaintiff insists: 1. That the court should have peremptorily instructed the jury that Mayne was the agent of Faulkner and on his principal's business at the time of the accident; 2. that the question of Mayne's negligence and plaintiff's damages should have been submitted to the jury.

Faulkner introduced no evidence and contends that he was entitled to a directed verdict at the conclusion of the plaintiff's case. However, as the jury found in his favor, Faulkner admits he cannot complain of the court's failure to give him a peremptory instruction. It will not be necessary for us to consider the question of whether or not the jury in returning the verdict against Mayne without mentioning Faulkner was a finding in favor of the latter, as he does not raise the question in his brief.

Since the only testimony the court would admit was on the question of agency, the plaintiff by avowals put in the record his own testimony and that of several of his witnesses as to how the accident happened, the extent of his injuries, and the amount of his medical bills. Faulkner was called by the plaintiff as if upon cross-examination.

The record shows that Faulkner had given Mayne blanket authority to use the car on business for the jail, "when his (Mayne's) judgment said so;" "on business for the jail, urgent business, they (Mayne and the other employees) could use the car, but not on personal business."

Chet Harp was a prisoner in the jail but had privileges of a trusty and was not confined. He was a railroad man whose home was in Corbin some 18 miles from Williamsburg where the jail is located. A few days before the accident Faulkner had told Mayne that when he went to Corbin to take Harp along and get the latter's laundry.

On the night of the accident Faulkner was some 300 yards from the jail guarding a jury. The cook of the

jail informed Mayne that eggs were needed for breakfast. After taking an employee of the jail home in the car, Mayne returned to the jail, picked up Harp and drove to Tom Buchanan's store at Rockhold (where Faulkner often bought eggs) some eight miles distant. There he bought a case of eggs and as he started to turn the car around and return to the jail, Harp requested him to drive on to Corbin, 8 or 9 miles further, so that he could get his laundry and some cigarettes. Mayne complied with Harp's request and while in Corbin had the accident complained of when he started back to the jail.

Harp asked Mayne to let him go along to Rockhold just for the ride and nothing was said about going to Corbin until after Mayne got the eggs and started to turn around. Mayne had no business in Corbin for Faulkner and did nothing for him after leaving Rockhold. The trip from Rockhold to Corbin was for the sole purpose of accommodating Harp.

Plaintiff insists that proof of the use of an employer's automobile by an employee creates the presumption that the employee was engaged in his master's business at the time of the accident; and that evidence to overcome such presumption must be of a conclusive or unimpeached character, or must be undisputed, clear and convincing, and that such presumption is not overcome as a matter of law by evidence presented on behalf of the defendant by interested witnesses, or which is of a suspicious nature, or is impeached to any extent, or which is contradictory, or reasonably subject to contradictory interpretations; citing Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S. W. (2d) 408; Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52; Home Laundry Co. v. Cook, 277 Ky. 8, 125 S. W. (2d) 763, and other cognate cases. There is no doubt as to this being the correct rule. However, plaintiff did not stop when he made out a prima facie case of agency, but his proof went further and showed that after obtaining the eggs at Rockhold instead of returning to the jail, Mayne at the request of Harp went on a personal and private trip of some 8 or 9 miles which had no connection with his master's business. Under such a state of facts the master is not liable and the respondeat superior doctrine has no application, Wyatt v. Hodson, 210 Ky. 47, 275 S. W. 15; Wells v. Combs, 251 Ky. 479, 65 S. W. (2d) 468; Packard-Louisville Motor Co. v. O'Neal, 248 Ky.

438, 58 S. W. (2d) 630; Corbin Fruit Co. v. Decker, 252 Ky. 766, 68 S. W. (2d) 434.

Here the proof was uncontradicted that at the time of the accident the servant was not using the car on his master's business, but had completely departed therefrom and was using it for his own personal convenience. Hence there was nothing to submit to the jury and defendant's motion for a peremptory instruction should have been sustained. Galloway Motor Co. v. Huffman's Adm'r, 281 Ky. 841, 137 S. W. (2d) 379. But as the jury returned a verdict for the defendant, the failure of the court to so direct a verdict is now immaterial, Maynard v. Kentucky & West Virginia Power Co., 266 Ky. 295, 98 S. W. (2d) 460.

Much space in the briefs is devoted to the question of whether or not under the rule of the case of Blue Valley Creamery Co. v. Cronimus, 270 Ky. 496, 110 S. W. (2d) 286, the trial court properly limited the amount of Faulkner's liability to the sum the plaintiff recovered against the other defendant, Mayne, on the second trial. But it is not necessary to decide that question since we have reached the conclusion the evidence established no liability whatever against Faulkner.

The judgment is affirmed.