**Lee Edward EASTERLING, Appellant**

v.

**MAN–O–WAR AUTOMOTIVE, INC., Appellee.**

No. 2005–CA–000114–MR.

Court of Appeals of Kentucky.

April 20, 2007.

Thomas K. Herren, Lexington, KY, for Appellant.

Jeffrey D. Thompson, Louisville, KY, for Appellee.

Before ACREE, DIXON, And KELLER, Judges.

*OPINION*

DIXON, Judge.

Appellant, Lee Edward Easterling, appeals from an order of the Fayette Circuit Court granting summary judgment in favor of Appellee, Man–O–War Automotive, Inc. Finding no error, we affirm.

This case arises out of a single car accident that occurred on May 3, 2002, in Lexington, Kentucky. Easterling was a passenger in an automobile operated by Chauncey Tudor. Tudor had been given four concert tickets by his general manager, who was unable to use them. Tudor then invited a co-worker, Micky Flinn, and Easterling to attend the concert with him. Tudor and Easterling had originally met

riding motorcycles and had been friends for four or five years.

After leaving work on the day in question, Tudor went home to change clothes, picked up Flinn, and then met Easterling at a bar before heading to the concert. After the concert was over, Tudor drove Easterling and Flinn to another bar. The evidence is uncontroverted that by the time the trio left the bar around 1:00 a.m., Easterling was very intoxicated and, in his own words, was "pretty well out of it." While driving down Chinoe Road, Tudor reached down to pick up his cell phone, causing his vehicle to veer and collide with a parked car. Easterling, who was riding in the back seat, suffered injuries as a result.

At the time of the accident, Tudor, a general sales manager for Man–O–War Automotive in Lexington, was driving a "demonstrator vehicle." The vehicle was furnished for his use by Man–O–War as part of his compensation/employment package. Tudor executed a Demonstrator Agreement that contained various provisions regarding his personal use of the vehicle. It is undisputed that Tudor did not own any vehicles and thus, was covered only under the insurance provided on the demonstrator vehicle.

In December 2003, Easterling filed a complaint in the Fayette Circuit Court claiming negligence on the part of Tudor and vicarious liability against Man–O–War. In August 2004, Easterling filed a motion for partial summary judgment on the issue of liability against Tudor. Man–O–War thereafter filed a motion for summary judgment on the grounds that since Tudor was not acting within the scope of his employment at the time of the accident, the theory of respondeat superior liability was inapplicable.

Following a hearing, the trial court granted Easterling's motion, ruling that as

a matter of law Tudor was negligent in causing the accident. The trial court stated that the case would proceed against Tudor on the issue of damages. Further, the trial court granted Man–O–War's motion, ruling that Tudor was not operating his vehicle within the course and scope of his employment at the time of the accident. As a result, Easterling's claims against Man–O–War were dismissed with prejudice. Following the trial court's denial of Easterling's CR 59 motion to alter, amend or vacate the summary judgment, he appealed to this court as a matter of right.

■ Easterling first argues that Man–O–War violated KRS 190.033 when it failed to provide liability coverage on the vehicle. Man–O–War correctly points out that Easterling did not raise this issue until he filed his CR 59 motion. The trial court nevertheless addressed the issue during the hearing on Easterling's motion, and ruled that it was without merit. We agree.

KRS 190.033 provides, in relevant part:

A motor vehicle dealer's license ... shall not be issued or renewed unless the applicant or holder of the license shall have on file with the commission an approved indemnifying bond or insurance policy issued by a surety company or insurance carrier authorized to transact business within the Commonwealth of Kentucky. The term of the bond or policy shall be continuous and shall remain in full force until canceled under proper notice. All bonds or policies shall be issued in the name of the holder or applicant for the dealer's license or wholesaler's license. The bond or policy for all dealers ... shall provide public liability and property damage coverage for the operation of any vehicle owned or being offered for sale by the dealer or wholesaler when being operated by the

owner or seller, his agents, servants, employees....

Easterling argues that Man–O–War failed to comply with the statute when it placed insurance with Legion Indemnity Company which was not a licensed insurance company in Kentucky. As the trial court noted, however, KRS 190.033 requires only that the insurance carrier be "authorized to transact business within the Commonwealth of Kentucky." Man–O–War presented sufficient evidence to demonstrate that Legion Indemnity was authorized in Kentucky, which is evidenced by the fact that Man–O–War was issued a dealer's license in accordance with the statute. In fact, during the hearing on Easterling's CR 59 motion, the trial court asked counsel, "Do you have any evidence to dispute the fact that this company was authorized to write insurance in Kentucky?" Easterling's counsel responded, "No, I don't have any basis to dispute that they are authorized."

As the trial court observed, Easterling's attempt to keep Man–O–War in this case under the guise of a statutory violation is based upon the fact that Legion Indemnity is now in receivership and, in all likelihood, will be unable to pay insurance benefits. In his brief, Easterling contends that Tudor, who relied on Man–O–War's representations regarding insurance coverage, will now be exposed to "financial ruin" in the absence of a finding that Man–O–War is vicariously liable. We would note that Tudor has not appealed any of the trial court's orders. Notwithstanding, there has been no allegation made that Man–O–War was uninsured at the time of the accident. Man–O–War has repeatedly stated that its insurance policy covered Tudor's vehicle and that the company has filed a claim with Legion Indemnity on the accident. Whether or not its insurer is now solvent is a separate matter. And while Legion Indemnity's status may be unfortunate for Easterling, it simply does not make Man–O–War liable.

■ Easterling next contends that the trial court erred in finding that there was no ongoing respondeat superior or agency relationship between Man–O–War and Tudor so as to impose contractual and vicarious liability upon Man–O–War for Tudor's negligence. Easterling argues that Man–O–War provided Tudor the demonstrator vehicle for use at his own discretion; provided Tudor the concert tickets; and knew that Tudor was accompanied by another salesperson and a frequent customer (Easterling). Based upon those facts, Easterling urges that Man–O–War should be held liable for Tudor's collision regardless of the circumstances under which it occurred. We simply cannot agree.

■ To hold an employer vicariously liable for the actions of an employee, the doctrine of respondeat superior requires a showing that the employee's actions were in the course and scope of his employment and in furtherance of the employer's business. As was noted in *Sharp v. Faulkner*, 292 Ky. 179, 166 S.W.2d 62, 63 (1942), the respondeat superior doctrine has no application when an employee engages on a "personal and private trip" which has "no connection with his masters' business."

In *Weldon v. Federal Chemical Company*, 378 S.W.2d 633 (Ky.1964), the sales manager of the defendant company was on his way to pick up his son at a party when he had to abandon a company vehicle on the road due to a frozen carburetor. Plaintiff's vehicle thereafter struck the abandoned vehicle. The uncontroverted evidence indicated that the defendant company had purchased the vehicle for the sales manager's use and that he was authorized to use it for company business and for "private pleasure." In affirming

the lower court's summary judgment in favor of the defendant, the high court held:

It is uncontradicted and admitted that Morris was on a purely personal mission as father going after his teenage son who was attending a party at the home of a neighbor, and that the trip had absolutely nothing to do with any furtherance of the defendant company business. This Court has, without exception, held the defendant to be without liability in such cases. *See Taulbee v. Mullins*, Ky., 336 S.W.2d 597, and the cases cited therein.

*Weldon, supra*, at 634.

The Court reached a similar result in *Oppenheimer v. Smith*, 512 S.W.2d 510 (Ky.1974), in holding that a restaurant was not liable when a plaintiff was injured by a restaurant employee driving a company automobile with permission. Since the accident occurred as restaurant employees were returning from a softball game not sponsored by the restaurant, the employee was not "on business of the company at the time and place of the accident." *Id.* at 512.

While Kentucky has not specifically dealt with the issue of respondeat superior in the context of a car salesperson's use of a demonstrator vehicle, several other jurisdictions have had the occasion to address whether a salesperson is acting within the scope of his employment while driving a demonstrator vehicle. In *State ex rel. City Motor Co. v. District Court*, 166 Mont. 52, 530 P.2d 486 (1975), a salesman was driving a demonstrator vehicle from a restaurant to his home on personal business when he was involved in an accident. The Montana Supreme Court, noting that there was no evidence in the record to indicate that the salesman's actions were anything but social, rejected the contention that he was acting within the course and scope of his employment:

[W]e detect a recurring theme in respondent's reasoning: the mere fact that a demonstrator on the street is of benefit to the dealer is enough to make the dealer answer for the faults of his salesman who drives it. This asks too much, for it would hold the dealer responsible at all times. We are not aware of any rule or policy of agency law requiring such a sweeping application of the doctrine of respondeat superior.

*Id.* at 489. *See also Atlanta Blue Print & Photo Reproduction Co. v. Kemp*, 130 Ga. App. 778, 204 S.E.2d 515 (1974); *Nichols v. McGraw*, 152 So.2d 486 (Fla.App.1963); *Bradley v. Holmes*, 248 Miss. 44, 157 So.2d 801 (1963).

We are not persuaded by Easterling's argument that because the tickets were provided by Tudor's manager that Man–O–War somehow becomes liable for Tudor's actions. Easterling fails to cite any authority from this jurisdiction or otherwise to support such a proposition. We simply cannot perceive how giving someone concert tickets meets the necessary "foreseeability test" required in Kentucky to create causation for a subsequent automobile accident. *See Lewis v. B & R Corp.*, 56 S.W.3d 432 (Ky.App.2001).

We are of the opinion that at the time of the collision, Tudor was engaged in a purely personal activity, and was not in any manner acting within the scope and course of his employment. As such, the trial court correctly granted summary judgment in favor of Man–O–War Automotive.

The judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.