RENDERED: JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1398-MR

DEPARTMENT OF CORRECTIONS;
BRAD ADAMS; MATTHEW
DEBOARD;[1] AND MICHAEL
CHRISTIAN                                                                              APPELLANTS


                         APPEAL FROM BOYLE CIRCUIT COURT
v.                    HONORABLE JEFF L. DOTSON, JUDGE
                              ACTION NO. 21-CI-00144


ZAKARY[2] SMITH                                                                       APPELLEE


                                        OPINION
                               AFFIRMING IN PART,
                               REVERSING IN PART,
                                AND REMANDING

                                  ** ** ** ** **

BEFORE: CETRULO, LAMBERT, AND TAYLOR, JUDGES.

---

[1] The spelling of Deboard's name varies throughout the record. We have opted to use the spelling from his responsive pleadings.

[2] The spelling of Appellee's name varies throughout the record. We have opted to use the spelling utilized by Appellee.

LAMBERT, JUDGE: Appellants, the Department of Corrections ("DOC") and its employees (who we will collectively refer to as "the DOC defendants"), bring this interlocutory appeal from the Boyle Circuit Court's order denying their motion for summary judgment on the basis of governmental immunity, official immunity, and qualified official immunity.[3] After careful review of the briefs,[4] record, and law, we affirm in part, reverse in part, and remand for entry of an order granting summary judgment consistent with this Opinion.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Smith previously worked for DOC at Northpoint Training Center, a prison, as a corrections officer. During Smith's employment, Brad Adams was the Warden of Northpoint. Lt. Michael Christian and Sgt. Matthew Deboard were fellow corrections officers at the facility, and Smith alleges that Lt. Christian supervised Sgt. Deboard.

Following his resignation, Smith filed the underlying action alleging claims against DOC and the DOC defendants, both in their professional capacities and individually. In his complaint, Smith made the following claims: (1) assault for Sgt. Deboard acting as if he would tase him; (2) battery for Sgt. Deboard tasing

---

[3] Interlocutory appeals from orders denying immunity are permitted by *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009).

[4] By separate order we grant Appellants' motion to strike attachments A-D of Smith's appellee brief, and any factual assertion based exclusively thereon, because the attachments are not contained in the record on appeal. Kentucky Rules of Appellate Procedure ("RAP") 32(E)(1)(c).

him; (3) intentional infliction of emotional distress ("IIED") for texts from Lt. Christian accusing him of faking an unrelated work place injury and calling him derogatory names and for Sgt. Deboard circulating a fake disciplinary write-up stating that Smith had failed a drug test and was falsely claiming that his injury occurred on the job; (4) libel for the fake write-up; and (5) that Northpoint was a hostile work environment based on the above acts and Warden Adams's failure to respond to Smith's complaints. Smith also raised an additional claim against DOC for breach of contract for its failure to adhere to its own anti-harassment policy.[5]

DOC and the DOC defendants moved for summary judgment claiming immunity, and Smith responded objecting. On November 1, 2025, the circuit court denied the motion without explanation beyond a cursory statement that questions of fact remain that should be determined by a jury. This appeal timely followed.

**STANDARD OF REVIEW**

DOC and the DOC defendants appeal, arguing that they were wrongfully denied immunity. "The issue of whether a defendant is entitled to the

---

[5] Smith raised the anti-harassment policy as a defense to DOC's claim of immunity in the proceedings below; however, it was only after the order on appeal was entered that Smith amended the complaint to raise the corresponding breach of contract claim. Because the issue of immunity waiver was presented to the circuit court, the complaint has been amended, and the parties fully briefed the issue, we will disregard the irregularity of the proceedings for the sake of judicial economy.

defense of sovereign or governmental immunity is a question of law" reviewed *de novo*. *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017).

## ANALYSIS

We begin our analysis with DOC's claim of governmental immunity from Smith's tort claims. An agency of state government has governmental immunity from civil damage actions arising from its performance of integral governmental acts. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). "The immunity does not extend, however, to agency acts which serve merely proprietary ends, i.e., non-integral undertakings of a sort [that] private persons or businesses might engage in for profit[,]" especially if the intent is to raise revenue or to participate in a commercial market. *Prater*, 292 S.W.3d at 887.

DOC states that its main function is the management of correctional institutions like Northpoint to accomplish its primary objectives of maintaining public safety and holding offenders accountable, citing in support Kentucky Revised Statutes ("KRS") 196.032; KRS 196.030(1)(a); and KRS 196.026(3)(k). DOC contends that inherent in the management of correctional institutions is the supervision of its employees and related issues, and such activities are therefore governmental functions entitled to immunity. Smith disputes that DOC was engaged in a governmental function, arguing generally that the operation of prisons is or at least has become a proprietary function given the rising number of privately

-4-

owned prisons and, more specifically, that the recruitment and retention of employees to run the prison is absolute proprietary.[6]

Though we are unaware of any authority that has directly addressed whether employment matters fall within the scope of an agency's governmental functions, this conclusion is a reasonable extrapolation of the law. Corrections is a long-recognized integral governmental function. *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 99 (Ky. 2009). And, plainly, DOC can only act through its employees or agents, making the management of such persons integral to DOC accomplishing its governmental functions. Further, if Smith's contention were correct, there would have been no need for the General Assembly to waive its sovereign immunity for employer discrimination in the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. *See Dep't of Corr. v. Furr*, 23 S.W.3d 615 (Ky. 2000), holding that the General Assembly intentionally waived its sovereign immunity for violations under the act by including the

---

[6]  Smith also cited KRS 49.060 in support of his claim that DOC is not immune. This statute, which waives immunity for negligence claims arising from actions of the Commonwealth, its departments, and its employees in the course of their employment, provides no support for Smith's position. The statute pertains solely to negligence claims brought before the Board of Claims and is, therefore, wholly inapplicable to this civil suit for intentional torts. Accordingly, we will not address it further.

Likewise, we will not consider Smith's lengthy argument related to DOC being a market participant and the consequences of this on its ability to claim immunity under the dormant Commerce Clause of the Constitution of the United States, because this Court "is without authority to review issues not raised in or decided by the trial court." *Fischer v. Fischer*, 197 S.W.3d 98, 102 (Ky. 2006).

Commonwealth within the definition of an employer. Nor would it have been necessary for the Supreme Court of Kentucky in *Rothstein*, 532 S.W.3d 644, to determine whether the General Assembly's waiver of sovereign immunity on contracts actions based on lawfully authorized written contracts with the Commonwealth, KRS 45A.245(1), applied to employment contracts.

For these reasons, we agree with DOC that the management of its employees is an integral state function entitling it to immunity on all tort claims, excepting the claim of hostile work environment to the extent it arises under the KCRA. DOC acknowledges immunity has been waived as to the hostile work environment claim under the KCRA.[7] Denial of summary judgment on that claim was proper.

Smith's contention that DOC, even if not directly liable, is indirectly liable on his tort claims under theories of *respondeat* superior and more broadly vicarious liability, is without merit. The Supreme Court of Kentucky has previously recognized that vicarious liability cannot circumvent sovereign immunity, otherwise, "the concept of sovereign immunity would be largely nullified[.]" *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003); *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 154 (Ky. 2003). And, although *Schwindel*

---

[7] Though only the issue of immunity is before this Court, we would be remiss not to note that hostile work environment claims are against employers, not merely supervisors. *See* KRS 344.030(2).

dealt with a county and the ministerial acts of its employees, instead of a state agency and intentional torts, the rationale is equally applicable herein. Smith's attempts to distinguish *Schwindel* on the basis that the complainant was not an employee are unavailing. Governmental immunity cannot be waived by virtue of the claimant's relationship with the Commonwealth, but only by the intent of the General Assembly.

Accordingly, DOC has governmental immunity from Smith's claims of assault, battery, IIED, and libel, and the circuit court erred in denying DOC summary judgment thereon.

Next, we shall address the tort claims against the DOC defendants in their official capacities. When sued in a representative capacity, an employee's actions are given the same immunity to which the agency would be entitled. *Yanero*, 65 S.W.3d at 522; *Doe v. Logan*, 602 S.W.3d 177, 185 (Ky. App. 2020). Accordingly, each defendant is immune, by virtue of DOC's immunity, from Smith's claims of assault, battery, IIED, and libel, and court erred in denying summary judgment on these claims.

We now turn to whether Warden Adams and Lt. Christian are immune from vicarious liability in their personal capacities for the assault, battery, IIED, and libel alleged to have been committed by another (for Warden Adams the acts

of both Lt. Christian and Sgt. Deboard, and for Lt. Christian just the latter).[8]

Warden Adams and Lt. Christian urge that they are immune, citing *Yanero*, and we

agree. The *Yanero* Court expressly held that, "[p]ublic officers are responsible

only for their own misfeasance and negligence and are not responsible for the

negligence of those employed by them if they have employed persons of suitable

skill." 65 S.W.3d 510, 528 (citing *Franklin Cnty. v. Malone*, 957 S.W.2d 195,199-

200 (Ky. 1997), *overruled on other grounds* by *Yanero*, and *Moores v. Fayette

Cnty.*, 418 S.W.2d 412, 414 (Ky. 1967)). As Smith is attempting to hold Warden

Adams and Lt. Christian liable for the intentional misfeasance of others, immunity

plainly applies.[9] That Smith alleges facts that could arguably permit vicarious

liability against a private employer has no bearing on the immunity analysis.[10]

---

[8] Smith also alleged that Lt. Christian was directly liable for IIED for the sexual slurs he texted, but our analysis has no bearing on this claim.

[9] Again, though not before us, we are compelled to note that *respondeat* superior permits an *employer* to be held liable for the actions of an employee. *Easterling v. Man-O-War Automotive, Inc.*, 223 S.W.3d 852 (Ky. App. 2007). Neither Warden Adams nor Lt. Christian was Smith's employer.

[10] As both parties acknowledge, the general rule is that an employer is not vicariously liable for an employee's intentional tort not motivated by the purpose of serving the employer. *Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002) (quoting *Johnson v. Brewer*, 98 S.W.2d 889, 891 (Ky. 1931); *see also Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 50-51 (Ky. 2008). Despite naming DOC and each of the DOC defendants on every claim, Smith only identified a basis for vicarious liability on the IIED claim against Lt. Christian. Smith alleges that Lt. Christian admitted calling Smith a sexual slur to get him to "man up" and return to work when Smith was off with an injury, and thus Smith argues Lt. Christian was furthering DOC's staffing objectives.

Finally, we will address whether DOC is immune from Smith's breach of contract claim. The General Assembly waived its immunity for contract actions arising from written contracts with the Commonwealth. KRS 45A.245(1). Smith alleged in his amended complaint that the anti-harassment policy he signed at the start of his employment is a contract and that DOC breached its terms when Warden Adams disregarded his reports of harassment.[11] On appeal, DOC argues the anti-harassment policy cannot be a contract because Smith was a merit employee whose rights were set by statute, Smith was the only signatory, and the policy is a typical employment document signed by every employee that merely notifies them of terms and conditions of their employment.

We fail to appreciate how, under these facts, Smith's merit employee status bars an otherwise effective contract. Similarly, the fact that Smith is the only signatory is of no legal consequence. *See LP Louisville Quinn Drive, LLC v. Leonard-Ray*, 704 S.W.3d 386, 392 (Ky. App. 2025), holding that, even though a nursing home had not signed the arbitration agreement, it had manifested its assent to its terms by drafting the document and mandating that the patient sign it as a condition of admission. And, contrary to DOC's position that typical employment documents cannot be a contract, the Supreme Court of Kentucky has held that

---

[11] We do not address the "NORTHPOINT TRAINING CENTER CONDITIONS OF EMPLOYMENT/VOLUNTEER SERVICES," because the amended complaint only identified the anti-harassment policy and there are no relevant terms contained in the document.

"[a]n express personnel policy can become a binding contract once it is accepted by the employee through his continuing to work when he is not required to do so." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005) (internal quotation marks omitted). Accordingly, the only question is whether the policy satisfies the requirements of a written contract.

In an alleged contract arising from employment policies, like in any contract, the promisor, DOC in this case, must intentionally manifest its assent to be bound. *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 308-09 (Ky. 2014). Additionally, to be enforceable, there must be an offer and acceptance, full and complete terms, and consideration. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002).

The document reads as follows:

ANTI-HARASSMENT POLICY STATEMENT

The Commonwealth prohibits harassment on the basis of race, color, national origin, sex, age, religion, sexual orientation, gender identity, genetic information, disability, political affiliation, or veteran status. Employees shall avoid offensive and inappropriate behavior at work and are responsible for ensuring that the workplace is free from harassment at all times.

Examples of prohibited conducted include, but are not limited to, threatening, offensive, or unwelcome conduct or abusive verbal language directed toward an individual or group on the basis of race, color, national origin, sex, age, religion, sexual orientation, gender identity, genetic information, disability, political affiliation, or veteran

-10-

status; lewd or obscene comments about an individual's body, attire, or gender, including abusive comments or jokes; bringing or displaying a lewd or obscene object, book, magazine, photograph, cartoon, calendar, picture, or similar item into the workplace; or use of electronic resources to transmit, solicit, display, or download lewd or obscene messages or materials.

Complaints of harassment will be promptly and carefully investigated. All employees are assured that they will be free from any and all reprisal or retaliation from filing such complaints. Further, all employees are assured that they will be free from any and all reprisals and retaliation for participating in an investigation of harassment.

Any employee who has a complaint of harassment at work, including by supervisor, co-workers, visitors, clients, or customers, has a duty to immediately bring the problem to the attention of management. The employee has the option of notifying their first line supervisor of the harassment, unless the supervisor is the source of the harassment. In that case, they should report the harassment to the second line supervisor. Employees may also notify their agency EEO coordinator or they may contact the State EEO coordinator at (502) 564-8000 for assistance. Employees may also contact their human resource office.

Any supervisor receiving a complaint of harassment shall report the complaint to the agency human resources office, agency EEO coordinator, or the state EEO coordinator. Failure to do so may be grounds for disciplinary action.

/s/ Zakary Smith_____
Signature

Zakary Smith_____          5/6/19_____
Name                                              Date

We agree with DOC that the policy does not demonstrate its intention to create an enforceable contract. The first two paragraphs merely state that discrimination on protected characteristics is prohibited by the Commonwealth, not DOC specifically, a right that is guaranteed by various state and federal laws,[12] and provides a non-exhaustive list of examples of prohibited conduct. The third, on which Smith relies, uses passive language that complaints will be investigated and assures employees that they will be free of reprisals. The latter again is provided by law.

Although the statement sets forth DOC's intended response to discrimination reports, the passive language falls short of manifesting an intention to be bound. This is clear when contrasted with the remaining portions of the policy that use express and directive language establishing the reporting obligations of employees and supervisors. Further, the policy is largely just a statement of the law, and, "generally, a promise to perform something that the promissor was already bound to do cannot constitute new and valuable consideration necessary to form a contract." *Sara v. Saint Joseph Healthcare Sys., Inc.*, 480 S.W.3d 286, 291 (Ky. 2015).

---

[12] *See, e.g.*, the KCRA, KRS Chapter 344, and The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 United States Code ("U.S.C.") § 4312, among other protective statutes.

Because we conclude that the anti-harassment policy is not an enforceable contract, the circuit court erred in denying DOC immunity on the breach of contract claim.

## CONCLUSION

For the foregoing reasons, we affirm the Boyle Circuit Court's denial of summary judgment on Smith's hostile work environment claim. Having concluded that the parties are immune, we reverse the Boyle Circuit Court's denial of summary judgment on all other claims to DOC, the DOC defendants in their official capacities, and to Warden Adams and Lt. Christian for vicarious liability in their individual capacities. The matter is remanded for entry of an order granting summary judgment in conformity with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jesse L. Robbins
Edward A. Baylous II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Brian D. Bailey
Danville, Kentucky